UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PLACIDA PROFESSIONAL CENTER, LLC, a Florida
Limited Liability Company, MICHAEL B. EDWARDS
and SHERYL A. EDWARDS,

      Plaintiffs,
vs.            CASE NO.

FEDERAL DEPOSIT INSURANCE CORPORATION, as
Receiver for Freedom Bank,

      Defendant.
_____/

## COMPLAINT

  Plaintiffs, **PLACIDA PROFESSIONAL CENTER, LLC**, a Florida Limited Liability Company ("Placida"), **MICHAEL B. EDWARDS** and **SHERYL A. EDWARDS**, (collectively "Edwards") sues **FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Freedom Bank, ("FDIC")** and alleges:

  1. This is an action for Rescission and Damages resulting from the repudiation of a construction loan agreement by **FDIC** pursuant to 12 U.S.C. § 1821(e) and Setoff of Plaintiffs' Damages award against other sums alleged to be due and owing to the former **Freedom Bank**.

  2. Plaintiff, **PLACIDA,** is a Florida Limited Liability Company whose principal place of business is located in Sarasota, Florida.

3. Plaintiff, **MICHAEL B. EDWARDS**, is an individual resident of Sarasota, Florida.

4. Plaintiff, **SHERYL A. EDWARDS**, is an individual resident of Sarasota, Florida.

5. **MICHAEL B. EDWARDS and SHERYL A. EDWARDS** are the sole members of **Placida** and are co-managing members of **Placida**.

6. **Freedom Bank** was a federally insured banking institution whose principal place of business was located in Bradenton, Florida. On or about October 31, 2008, **Freedom Bank** was closed and the **FDIC** was appointed as the receiver to wind up the affairs of **Freedom Bank**. Attached hereto as **Exhibit A** is the order entered on October 31, 2008, appointing the **FDIC** as Receiver for **Freedom Bank**.

7. Defendant, **FDIC**, is a corporation organized and existing pursuant to an Act of Congress of the United States known as the Federal Deposit Insurance Act 12 U.S.C. § 1811, et sec with its principal place of business located in Washington DC.

### Jurisdiction and Venue

8. This Court has jurisdiction pursuant to 12 U.S.C § 1821(d)(6)(A)(ii) and because this controversy arises under the laws of the United States.

9. Pursuant to 12 U.S.C § 1821(d)(6)(A)(ii), venue is proper in the Middle District of Florida because the former **Freedom Bank** maintained its principal place of business in Bradenton, Florida.

## The Placida Construction

10. On or about February 28, 2007, **Placida** executed a Construction Loan Agreement, ("Construction Loan Agreement") Promissory Note ("Note") and Mortgage ("Mortgage") and other documents (collectively referred to as "the Loan") whereby **Freedom Bank** committed to lend the sum of $3,280,000.00 to **Placida** to construct a 17,600 square foot professional office center in **Placida**, Charlotte County, Florida ("the Placida Project") whose legal description is as follows:

> **Block 105, GROVE CITY SUBDIVISION, according to the plat thereof recorded in Plat Book 1, Page 4, of the Public Records of Charlotte County, Florida, together with vacated 15-foot alley described in Official Records Book 1844, Page 1557, and less state road right-of-way.**

("the Placida Property").  Attached hereto as **Exhibit B** is the Construction Loan Agreement; attached as **Exhibit C** is the Promissory Note; attached as **Exhibit D** is the Mortgage; and attached as **Exhibit** E is the Loan Agreement.

11. As a condition of the Loan, **Freedom Bank** required its members to execute personal guaranties to further secure the loan. Attached hereto as **Exhibit F** are the guaranties executed by **Edwards**.

12. The Loan Documents were drafted by **Freedom Bank's** attorney. **Freedom Bank, Placida** and **Edwards** executed all of the Loan Documents.

13. Pursuant to the Construction Loan Agreement, **Placida** was to construct the Placida Project pursuant to a Construction Loan Budget submitted to and approved by **Freedom Bank**. Attached hereto as **Exhibit G** is a copy of the Construction Loan Budget approved by **Freedom Bank**.

14. The Construction Loan Agreement provided that disbursements from the Loan would be made upon submission of a draw request to Freedom Bank by Placida and after inspection by Freedom Bank's inspector to confirm that the items to be paid under the draw request were complete to the degree funds were requested.

15. Pursuant to the Construction Loan Agreement, $240,000.00 of the principal amount of the loan was to be reserved for interest payments on the Loan during construction and the reasonable period of time expected to obtain tenants for the Placida Project upon completion.

16. The Construction Loan Agreement further provided that upon substantial completion, all undisbursed funds from the Loan would be disbursed to **Placida**.

### The Fruitville Loan

17. On or about January 5, 2006, **Freedom** and **Edwards** executed a loan agreement, promissory note, first mortgage and other documents ("the Fruitville Loan") whereby **Freedom Bank** provided purchase money financing for the acquisition of real property located in Sarasota County, Florida whose legal description is as follows:

> **Parcel 1**
> East 36 feet of Lot 16 and the West 28 feet of Lot 17, Block C, Ringling Boulevard Subdivision, as per plat recorded in Plat Book 4, Page 79 of the Public Records of Sarasota County, Florida; and
>
> **Parcel 2**
> Lot 18 and the East 22 feet of Lot 17, Block C, Ringling Boulevard Subdivision, as per plat recorded in Plat Book 4, Page 79, of the Public Records of Sarasota County, Florida; and
>
> **Parcel 3**
> Lot 19, and the West ½ of Lot 20, Block "C", Ringling Boulevard, according to the plat thereof, recorded in Plat Book 4, Page 79, of the Public Records of Sarasota County, Florida.

("the Fruitville Property"). Attached hereto as **Exhibit H** is the Promissory Note; attached as **Exhibit I** is the Mortgage; and attached as **Exhibit** J is the Loan Agreement for the Fruitville Loan.

18. **Freedom Bank** and **Edwards** agreed that **Edwards** would endeavor to rezone and obtain site plan approval for construction of a 12,000 square foot office building to be occupied by **Edwards** ("the Fruitville Project"). After obtaining site plan approval,

5

**Freedom Bank** agreed that it would refinance the Fruitville Loan and would extend construction financing for construction of the improvements upon completion of the Placida Project. Attached hereto as **Exhibit K** is a copy of the loan commitment from **Freedom Bank** to **Edwards** for the purposes of construction of the Fruitville Project.

### Progress of Placida Construction

19. On or about March 27, 2007, **Placida** and its General Contractor, Fred Shute Real Estate and Development, Inc. ("General Contractor") executed a Construction Agreement for the construction of the improvements on the Property ("the Construction Contract").

20. When General Contractor initially received bids from its subcontractors for construction on the Property prior to the Closing, the cost of construction was estimated at $2,765,045.38 with an initial interest reserve ("Interest Reserve") established in the amount of $240,000.00.

21. **Michael Edwards** devoted his full-time attention to the supervision and management of the Project, and as a direct result of re-bidding each element of the Project, the cost of construction decreased to $1,832,733.00, or a total project cost of $2,478,733.00. Pursuant to the Construction Loan Agreement, any funds remaining in the Construction Loan account, including the

6

cost savings of approximately $666,262.00 were to be disbursed to **Placida**.

22. From July 27, 2007 to October 15, 2008, construction proceeded according to schedule with monthly draw requests submitted at the end of each month. A total of 12 draw requests were received, reviewed and paid by **Freedom Bank** with disbursements made from the Loan in the total amount of $1,597,504.20 as of October 30, 2008.

23. During construction, interest only payments were made on the 28th day of each month by **Freedom Bank** drawing the same from the Interest Reserve. As such, the monthly interest payment due on October 28, 2008 was paid from the Interest Reserve on or about October 30, 2008.

24. After payment of the October 30, 2008 interest payment, the sum of $1,682,495.68 remained in the Construction account.

25. Before **Placida** could submit Draw request #13 for General Contractor expenditures in October 2008, at a time when the Placida Project was approximately 3-4 weeks from completion of construction, the **FDIC** was appointed as receiver for **Freedom Bank** on Friday, October 31, 2008.

26. After learning about the closure of **Freedom Bank** on Saturday, November 1, 2008, **Placida** contacted Vixien Powell, the former **Freedom Bank** officer charged with responsibility of

supervising the Loan on Monday, November 3, 2008. She suggested that **Placida** submit its request for Draw # 13 in the amount of $45,948.90, which Draw #13 was submitted on November 4, 2008.

27. Later that day, on Monday, November 3, 2008, Powell notified **Placida** about a meeting called by the **FDIC's** representatives scheduled for November 6, 2008 to discuss the Loan.

28. At the November 6, 2008 meeting, the **FDIC** notified **Placida** that the **FDIC** was exercising its right of repudiation of the Loan pursuant to 12 U.S.C. § 1821(e).

29. At the November 6, 2008 meeting, **Placida** was informed that the **FDIC** did not intend to fund further draws from the Loan, including Draw # 13 for work performed on the Placida Project in October 2008, citing that the continued performance thereof by the **FDIC** would be "burdensome" and repudiation would "promote the orderly administration of the failed institutions's affairs.

30. On or about February 3, 2009, **Placida** submitted a claim to the **FDIC** for rescission of the Note and mortgage and for damages caused by the **FDIC's** repudiation of the Construction Loan Agreement. The **FDIC** received **Placida's** claim on February 4, 2009. Attached hereto as **Exhibit L** is a copy of the Claim submitted by **Placida**.

31. On or about July 30, 2009, the **FDIC** sent **Placida** notice of its intent to extend 180 day claims period, pursuant to 12

8

U.S.C. 1821(d)(5)(a)(ii) which was agreed to by **Placida** on August 3, 2009.

32. On or about September 1, 2009, the **FDIC** sent to **Placida** notice of the denial of its claim indicating that "the claim was deemed without merit since the loan has been in default since October 2008 and therefore, not proved to the satisfaction of the Receiver". Attached hereto as **Exhibit M** is the notice sent by the **FDIC** denying **Placida**'s claim. **Placida** received the **FDIC's** notice of the denial of its claim on September 8, 2009.

33. On or about September 18, 2009, the **FDIC** sent to **Placida** a second notice of the denial of its claim which appeared to mirror the language in the September 1, 2009 claim denial correspondence. Attached hereto as **Exhibit N** is the notice sent by the **FDIC** denying **Placida**'s claim. **Placida** received the **FDIC's** second notice of the denial of its claim on September 24, 2009.

34. Because the **FDIC** repudiated the Loan and has denied **Placida's** claim, **Placida** has been damaged.

35. All conditions precedent to the filing of this action have been satisfied or have been waived.

36. Plaintiffs have retained the undersigned counsel and are obligated to pay a reasonable fee for their services.

37. Pursuant to the terms of the Promissory Note and Mortgage, the prevailing party to any litigation is entitled to receive an award of its reasonable attorney's fees and costs.

## COUNT I - RESCISSION

38. This is an action for rescission against the **FDIC** in its capacity as Receiver for **Freedom Bank.**

39. Plaintiffs reallege paragraphs 1 through 37 as if fully set forth herein.

40. At the November 6, 2008 meeting, the **FDIC** notified **Placida** that the **FDIC** was exercising its right of repudiation of the Loan pursuant to 12 U.S.C. § 1821(e).

41. On or about February 3, 2009, **Placida** submitted a claim to the **FDIC** for rescission of the Note and Mortgage and for damages caused by the **FDIC**'s repudiation of the Loan which was received by **FDIC** on February 4, 2009.

42. On or about September 1, 2009, the **FDIC** sent to **Placida** notice of the denial of its claim which was received by **Placida** on September 8, 2009 and a second notice of denial of its claim on September 18, 2009 which was received on or about September 24, 2009.

43. Although it repudiated the Loan, the **FDIC** continues to attempt to enforce **Placida**'s and **Edwards**' obligations thereunder.

44. Although it repudiated the Loan, the **FDIC** has failed to return the cancelled original Note to **Placida.**

45. Although it repudiated the Loan, the **FDIC** has failed to return the cancelled guaranties to **Edwards.**

46. Although it repudiated the Loan, the **FDIC** has failed to release the Property from the lien of the Mortgage.

WHEREFORE, **Placida** and **Edwards** demand judgment for rescission of the Note, the Guaranties and the Mortgage, for their reasonable attorney's fees and costs and for such other relief as the Court deems proper.

## COUNT II - DAMAGES

47. This is an action for damages against the **FDIC** in its capacity as Receiver for **Freedom Bank,** for repudiation pursuant to 12 U.S.C. 1821(e).

48. Plaintiffs reallege paragraphs 1 through 37 as if fully set forth herein.

49. At the November 6, 2008 meeting, the **FDIC** notified **Placida** that the **FDIC** was exercising its right of repudiation of the Loan pursuant to 12 U.S.C. § 1821(e).

50. On or about February 3, 2009, **Placida** submitted a claim to the **FDIC** for rescission of the Note and Mortgage and for damages caused by the **FDIC**'s repudiation of the Loan which was received by **FDIC** on February 4, 2009.

51. On or about September 1, 2009, the **FDIC** sent to **Placida** notice of the denial of its claim which was received by **Placida** on September 8, 2009 and a second notice of denial of its claim on September 18, 2009 which was received on or about September 24, 2009.

52. As a result of the repudiation of the Loan and the denial of its Claim, Placida has been damaged.

WHEREFORE, Plaintiffs demand judgment for damages against the **FDIC**, as receiver for **Freedom Bank**, for their reasonable attorney's fees and costs and for such other relief as the Court deems proper.

## COUNT III - SETOFF

53. This is an action for setoff against the **FDIC** in its capacity as Receiver for **Freedom Bank**, to setoff any award for damages awarded to Plaintiffs for repudiation pursuant to 12 U.S.C. 1821(e) with other sums alleged to be owed by Edwards to the former **Freedom Bank**.

54. Plaintiffs reallege paragraphs 1 through 37 as if fully set forth herein.

55. On information and belief, the **FDIC** continues to demand sums from **Edwards** under the Fruitville Loan.

56. On information and belief, the amount of damages suffered by Plaintiffs exceeds the amount claimed to be owed by **Edwards** pursuant to the Fruitville Loan.

57. On information and belief, the **FDIC**, as Receiver for **Freedom Bank**, currently owns and holds the Note and Mortgage related to the Fruitville Loan.

WHEREFORE, Plaintiffs demand a setoff of any amount awarded to Plaintiffs against the Fruitville Note and Loan Agreement, and for rescission of the Fruitville Mortgage against the **FDIC**, as receiver for **Freedom Bank**, for their reasonable attorney's fees and costs and for such other relief as the Court deems proper.

        **THE EDWARDS LAW FIRM, PL**
        1901 Morrill Street
        Sarasota, Florida 34236
        Telephone: 941-363-0110
        Facsimile: 941-952-9111
        sedwards@edwards-lawfirm.com
        Counsel for Plaintiffs

By: _____
        Sheryl A. Edwards
        Florida Bar No.: 0057495