UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PLACIDA PROFESSIONAL CENTER, LLC, a Florida
Limited Liability Company, MICHAEL B. EDWARDS
and SHERYL A. EDWARDS,

                    Plaintiffs,
vs.                                CASE NO. 8:2009 CV 02221-T30 MAP

FEDERAL DEPOSIT INSURANCE CORPORATION, as
Receiver for Freedom Bank,

                    Defendant.

_____/

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

         Pursuant to Rule 56, Federal Rules of Civil Procedure,
and Local Rule 3.01 for the Middle District Court of Florida,
Plaintiffs, **PLACIDA PROFESSIONAL CENTER, LLC, a Florida Limited
Liability Company ("Placida"), MICHAEL B. EDWARDS and SHERYL A.
EDWARDS, (collectively "Edwards")** hereby move for Summary Judgment
on Count II of the First Amended Complaint [DKT 21] against **FEDERAL
DEPOSIT INSURANCE CORPORATION as Receiver for Freedom Bank, ("FDIC-
R").** Plaintiffs show that there is no genuine issue of material
fact and that the undisputed facts show that Plaintiffs are
entitled to judgment as a matter of law on Count II of the First
Amended Complaint for Damages.

## THE UNDISPUTED FACTS UPON WHICH SUMMARY JUDGMENT SHOULD BE GRANTED

1.    Plaintiff, **Placida**, is a Florida Limited Liability Company whose principal place of business is located in Sarasota, Florida.  See Affidavit of Michael B. Edwards at ¶ 1.

2.    **Freedom Bank** was a federally insured banking institution whose principal place of business was located in Bradenton, Florida. On or about October 31, 2008, **Freedom Bank** was closed and the **FDIC-R** was appointed as the receiver to wind up the affairs of **Freedom Bank**.  See Affidavit of Michael B. Edwards at ¶ 9.

3.    On or about February 28, 2007, **Placida** executed a Construction Loan Agreement, ("Construction Loan Agreement") Promissory Note ("Note") and Mortgage ("Mortgage") and other documents (collectively referred to as "the Loan") whereby **Freedom Bank** committed to lend the sum of $3,280,000.00 to **Placida** to construct a 17,600 square foot professional office center in Charlotte County, Florida ("the Placida Project") whose legal description is as follows:

> **Block 105, GROVE CITY SUBDIVISION, according to the plat thereof recorded in Plat Book 1, Page 4, of the Public Records of Charlotte County, Florida, together with vacated 15-foot alley described in Official Records Book 1844, Page 1557, and less state road right-of-way.**

("the Placida Property").  See Affidavit of Michael B. Edwards at ¶ 2 and Exhibit A thereto.

4.  Pursuant to the Construction Loan Agreement, **Placida** was to construct the Placida Project pursuant to a Construction Loan Budget submitted to and approved by **Freedom Bank**.  See Affidavit of Michael B. Edwards at  ¶ 3.

5.   Pursuant to the Construction Loan Agreement, $240,000.00 of the principal amount of the loan was to be reserved for interest payments on the Loan during construction.  See Affidavit of Michael B. Edwards at  ¶ 3.

6.  On or about March 27, 2007, **Placida** and its General Contractor, Fred Shute Real Estate and Development, Inc. ("General Contractor") executed a Construction Agreement for the construction of the improvements on the Placida Property ("the Construction Contract"). See Affidavit of Michael B. Edwards at  ¶ 4.

7.  From July 27, 2007 to October 15, 2008, construction proceeded according to schedule with monthly draw requests submitted at the end of each month.  A total of 12 draw requests were received, reviewed and paid by **Freedom Bank** with disbursements made from the Loan in the total amount of $1,597,504.20 as of October 30, 2008.  See Affidavit of Michael B. Edwards at  ¶ 5.

8.  During construction, interest only payments were made on the 28th day of each month by **Freedom Bank** drawing the same from

the Interest Reserve.  As such, the monthly interest payment due on October 28, 2008 was paid from the Interest Reserve on or about October 30, 2008.   See Affidavit of Michael B. Edwards at  ¶ 6.

9.  After payment of the October 30, 2008 interest payment, the next monthly interest payment would not be due until November 28, 2008.  See Affidavit of Michael B. Edwards at  ¶ 7.

10.   After payment of the October 30, 2008 interest payment, the sum of $1,682,495.68 remained in the Construction account.  See Affidavit of Michael B. Edwards at  ¶ 8.

11. The **FDIC-R** was appointed as receiver for **Freedom Bank** on Friday, October 31, 2008.   On that date, the Placida Project was approximately 3-4 weeks from completion of construction.   See Affidavit of Michael B. Edwards at  ¶ 9.

12. On or about November 6, 2008, the **FDIC-R** notified **Placida** that it was exercising its right of repudiation of the Loan pursuant to 12 U.S.C. § 1821(e), citing that the continued performance thereof by the **FDIC-R** would be "burdensome" and repudiation would "promote the orderly administration of the failed institutions's affairs".  See Affidavit of Michael B. Edwards at ¶ 10.

13.   On Friday, October 31, 2008, the date of the appointment of **FDIC-R** as receiver for **Freedom Bank** and on November 6, 2008, the date of **FDIC-R's** repudiation of the Loan, the Loan was

4

in good standing in all respects and was not in default.   See Affidavit of Michael B. Edwards at   ¶ 11.

14.   On or about February 3, 2009, **Placida** submitted a timely claim to the **FDIC-R** for damages caused by the **FDIC-R's** repudiation of the Construction Loan Agreement.   The **FDIC-R** received **Placida's** claim on February 4, 2009.   See Affidavit of Michael B. Edwards at   ¶ 15 and Exhibit C thereto.

15.   On or about July 30, 2009, the **FDIC-R** sent **Placida** notice of its intent to extend 180 day claims period, pursuant to 12 U.S.C. 1821(d)(5)(a)(ii) which was agreed to by **Placida** on August 3, 2009.   See Affidavit of Michael B. Edwards at   ¶ 17 and Exhibit D thereto.

16.   On or about September 1, 2009 and again on September 18, 2009, the **FDIC-R** notified **Placida** that it denied its claim. See Affidavit of Michael B. Edwards at   ¶ 18.

17.   Because the **FDIC-R** repudiated the Loan and has denied **Placida's** claim, **Placida** has been damaged in the amount of $1,632,000.   See Affidavit of Michael B. Edwards at   ¶ 21; Deposition of Richard Bass, MAI at page 71 and attached appraisal report.

18.   On or about October 30, 2009, **Placida** filed this action for declaratory relief, repudiation damages and setoff against the **FDIC-R** and filed a Lis Pendens in the public records of

Charlotte County, Florida against the Placida Property.    See
Affidavit of Michael B. Edwards at ¶ 19.

## MEMORANDUM OF LAW

19.  Pursuant to Rule 56 and Local Rule 3.01, the
foregoing undisputed facts show that Plaintiffs are entitled to
Final Summary Judgment on Count II of the First Amended Complaint.

## SUMMARY JUDGMENT STANDARD

20.  A motion for summary judgment should be granted "if
the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the
moving party is entitled to a judgment as a matter of law.
Fed.R.Civ.P. 56(c). By its very terms, this standard provides that
"the mere existence of *some* alleged factual dispute between the
parties will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there will be no genuine
issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.
242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,
106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

21.  An issue of fact is "genuine" if the record taken as
a whole could lead a rational trier of fact to find for the non-
moving party.    *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505;

6

*Matsushita Electric Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

22. If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. See *United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir. 1991). The moving party "must support its motion with credible evidence... that would entitle it to a directed verdict if not controverted at trial." *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)).

23. "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F.2d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir. 1991)). *See also* Fed.R.Civ.P. 56(e).

## The FDIC's Repudiation Powers under §1821

24.    The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") gives the receivers of failed banks and savings and loan institutions wide-ranging powers to consolidate and liquidate those institutions.  Receivers have broad authority under FIRREA to repudiate any contract or lease:

> (A) to which such institution is a party;
>
> (B)  the  performance  of  which  the  ...  receiver,  in  [its] discretion, determines to be burdensome; and
>
> (C) the disaffirmance or repudiation of which the ... receiver determines,  in  [its]  discretion,  will  promote  the  orderly administration  of  the  institution's  affairs."  12  U.S.C.  § 1821(e)(1).

25. If the Federal Deposit Insurance Corporation ("FDIC") repudiates a contract, it is liable to the non-breaching party for "actual  direct  compensatory  damages"  resulting  from  its repudiation. 12 U.S.C. § 1821(e)(3)(A).

26. The text of 12 U.S.C. § 1821(e) states in relevant part:

**§ 1821. Insurance Funds**

**(e) Provisions relating to contracts entered into before appointment of conservator or receiver.**

> **(1) Authority to repudiate contracts. In addition to any other rights a conservator or receiver may have, the conservator or receiver for any**

insured depository institution may disaffirm or repudiate any contract or lease—

    **(A)** to which such institution is a party;

    **(B)** the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

    **(C)** the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

**(2) Timing of repudiation.** The conservator or receiver appointed for any insured depository institution in accordance with subsection (c) shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

**(3) Claims for damages for repudiation.**

    **(A) In general.** Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—

        **(i)** limited to actual direct compensatory damages; and

        **(ii)** determined as of—

            **(I)** the date of the appointment of the conservator or receiver; or

            **(II)** in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

    **(B) No liability for other damages.** For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—

        **(i)** punitive or exemplary damages;

        **(ii)** damages for lost profits or opportunity; or

**(iii) damages for pain and suffering.**

## FDIC's CLAIMS PROCEDURE UNDER 12 U.S.C. § 1821(d)

27. "FIRREA" also created a statutory procedure for the processing of claims against the FDIC.  12 U.S.C. §§ 1821(d)(3)-(13).  That process requires all claims against a failed financial institution, including those caused by the FDIC's repudiation of contracts with the failed institution, to be submitted to the FDIC within 90 days of the FDIC's publication of notice of the receivership  12 U.S.C. § 1821(d)(3)(B) or mailing of a claims form to a known creditor. 12 U.S.C. §1821(d)(3)(C).

28.  Upon receipt of a claim, the FDIC has 180 days to review the claim.  *See* 12 U.S.C. § 1821(d)(5)(A)(I) ("the claims period" or "the review period").  The FDIC may find in favor of the claimant, or it may 'disallow' the claim, i.e., reject it.  12 U.S.C. § 1821(d)(5)(D).

29.   If  the  FDIC  disallows  an  individual's § 1821(d)(5)(A)(I) claim, or if the 180-day review period expires without a decision by the FDIC-whichever occurs earlier-a claimant may elect one of two courses of action.

> a.   As its first option, a claimant must request administrative review of the disallowed claim within 60 days of the FDIC's final determination. *See* 12 U.S.C. § 1821(d)(6)(A);

> b.   The claimant's second option is to proceed directly to federal district court. *See* 12 U.S.C. §

> 1821(d)(6)(A) "... the claimant may ... file suit
> on such claim ... in the district or territorial
> court of the United States for the district within
> which the depository institution's principal place
> of business is located ...");

*Helm v. Resolution Trust Corp.,* 43 F.3d 1163, 1165 (7th Cir. 1995) (stating that "the dissatisfied claimant may avoid further dealing with the RTC[1]. He may return to square one, and, under 12 U.S.C. § 1821(d)(6)(A), file suit against the RTC in federal district court, not for review of the RTC's disallowance, but for relief on the underlying claim. Such a suit ignores the RTC's disallowance and allows de novo examination of the claim by the federal courts.  12 U.S.C. § 1821(d)(6)(A)").

30.   In making this fresh and independent determination, therefore, the Court may consider any and all evidence relating to the claim, regardless of its presentation to the FDIC during the claims review process.  *Id.*

31.   A claimant choosing this second option must file suit within 60 days from the FDIC's denial of the claim, if a response is received, or within 60 days of the expiration of the 180 day claims period. *See* 12 U.S.C. § 1821(d)(6)(A) "Before the end of the 60-day period beginning on the earlier of-(i) the end of

---

[1]  The Resolution Trust Corporation ("RTC")  was the statutory predecessor to the FDIC. *See, e.g., Resolution Trust Corp. v. First American Bank*, 155 F.3d 1126, 1127 (9th Cir.1998) (stating that the RTC was the FDIC's predecessor). The RTC was abolished in 1995, and replaced by the FDIC.  *See* 12 U.S.C. § 1441a(m)(1).

the period described in paragraph (5)(A)(i) with respect to any

claim against a depository institution for which the [FDIC] is

receiver; or (ii) the date of any notice of disallowance of such

claim pursuant to paragraph (5)(A)(i), the claimant may ... file

suit on such claim ...").   *Id.*

   32. In summary, a claimant must comply with the

following procedural steps to prevail on a claim against the FDIC

for contract repudiation:

> a. File a claim with the FDIC within 90 days from the FDIC's publication of the receivership and mailing of a claim form;
>
> b. If the FDIC disallows the claim, a claimant can either:
>
>> (1) request administrative review of the disallowed claim within 60 days of the FDIC's disallowance of the claim; or,
>>
>> (2) proceed directly to federal district court in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located and file an action within 60 days of the FDIC's disallowance of the claim.

   33. Thus, the elements of § 1821 Repudiation Claim

against the FDIC are established when reading these two sub-

sections together:

> **- Existence of a contract with failed banking institution**
>
> **- Repudiation of the same by the FDIC**

12

**- Repudiation occurs within a reasonable time**

**- Actual, direct, compensatory damages caused by repudiation**

**- Compliance with jurisdictional claims procedure**

34.  In the instant case, **Placida** has met all of these elements.

35. It is undisputed that **Placida** and the former **Freedom Bank** were parties to a Construction Loan Agreement, Note and Mortgage.  See Affidavit of Michael B. Edwards at  ¶ 2 and Exhibit A thereto.

36. It is undisputed that the **FDIC-R** repudiated the loan. See Affidavit of Michael B. Edwards at ¶ 10; Answer of **FDIC-R** [Dkt. 23] at ¶ 28.

37. It is undisputed that the repudiation occurred within a week of appointment of the **FDIC-R** as receiver, which **Placida** concedes, was within a reasonable time.  See Affidavit of Michael B. Edwards at  ¶ 10.

38.   It is undisputed that **Placida** suffered actual, direct, and compensatory damages, which have been proven with reasonable certainty by **Placida**.   See Deposition Transcript of Richard Bass, MAI at Page 72 and attached Appraisal Report.

39. It is undisputed that **Placida** complied with the jurisdictional claims procedure or exhaustion requirement set forth

in §1821(d) requiring **Placida** to file a claim within 60 days of the mailing of the claims form by the **FDIC-R**.  See Affidavit of Michael B. Edwards at  ¶14-16.

40.    **FDIC-R** does not dispute that these procedural requirements have been met and has admitted in its Answer [Dkt. 23] that Plaintiffs' claim was timely received on February 4, 2009.

41.    **Placida** has also complied with the procedural requirements and deadline to file an action within 60 days from the denial of its claim by the FDIC.  In the instant case, the **FDIC-R** denied Plaintiffs' claim on September 1, 2009 and again on September 18, 2009.   Notwithstanding the repeated mailing of notices denying Plaintiffs' claim by the FDIC, Plaintiffs filed this action on October 30, 2009, the 60th day after the first denial notice dated September 1, 2009.   See Affidavit of Michael B. Edwards at  ¶18-20.

42.    As such, since there is no dispute as to the material facts necessary to establish the substantive or procedural requirements of Plaintiffs' cause of action for repudiation damages pursuant to § 1821(e), Plaintiffs are entitled to summary judgment as a matter of law.

### NO FACTS IN DISPUTE

43.  As evidenced by the **FDIC-R**'s Rule 26(a) disclosures and discovery (or lack thereof) taken to date, there are no

material facts in dispute in this matter.  The **FDIC-R** has not

disclosed or otherwise identified any fact or expert witnesses who

will testify as to any facts in this matter.  Additionally, the

**FDIC-R** has not alleged or provided any documents in discovery to

Plaintiffs that refute any allegations of the First Amended

Complaint.  As such, a motion for summary judgment should be

granted in favor of Plaintiffs since the pleadings, depositions,

answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a

judgment as a matter of law.  Fed.R.Civ.P. 56(c).

## FDIC-R's AFFIRMATIVE DEFENSES

44. In its Answer to Count II of the First Amended

Complaint [Dkt. 23], the **FDIC-R** alleges 3 affirmative defenses:

> a.  That Plaintiffs' recovery is limited to the
>     recovery of receivership certificates;
>
> b.  That Plaintiffs' damages must be setoff to any
>     amounts owed by Plaintiffs to the FDIC; and,
>
> c.  Plaintiffs' have failed to mitigate damages.

45. Plaintiffs do not dispute the **FDIC-R's** setoff

defense.  It is agreed that any damages awarded by this Court must

be setoff to amounts owed by Plaintiffs to the FDIC, is measured as

of the date of the receivership, pursuant to 12 U.S.C.

§1821(e)(3)(A)(ii).  *See, e.g., Federal Deposit Insurance Corp. v. Parkway Executive Office Center,* 1998 WL 18204 (E.D. Pa. 1998) (permitting claims of offset and recoupment in action for damages based upon FDIC's repudiation of contract);  *Federal Deposit Insurance Corp. v. Grant,* 157 F. 3d 697 (9th Cir. 1998)(permitting setoff of repudiation damages against amounts owed on promissory notes); *Grant County Savings and Loan v. Resolution Trust Corp.,* 770 F. Supp. 1374 (E.D. Ark. 1991)(permitting setoff of claims or demands between the RTC and savings association related to loan participations); *Interfirst Bank Abilene, N.A. v. Federal Deposit Insurance Corp.,* 777 F. 2d 1092 (5th Cir. 1985)(permitting setoff of Interfirst's account against debts of Interfirst); *Villafane Neris v. Citibank, N.A.,* 845 F. Supp 930 (D. P.R. 1994)(permits FDIC to setoff CD to loan balance).

46. Plaintiffs also do not dispute the **FDIC-R's** first affirmative defense that any damages awarded against the **FDIC-R** in excess of amounts owed by Plaintiffs to the **FDIC-R** can be paid in the form of receiver's certificates, in advance of a final distribution of assets. *FDIC v. Hickey*, 2010 WL 5151327 (E.D.N.Y., Dec. 13, 2010); *Resolution Trust Corp. as Receiver for Occidental Nebraska Savings, FSB v. Titan Financial Corp.,* 36 F.3d 891 (9th Cir. 1994).

47. However, **Placida** denies the **FDIC-R's** Third Affirmative Defense that Plaintiffs failed to mitigate their damages, since the measure of damages for the **FDIC-R's** contract repudiation is measured as of the date of the receivership, pursuant to 12 U.S.C. §1821(e)(3)(A)(ii). Furthermore, pursuant to 12 U.S.C. §1821(d)(14), the rights of parties to the assets of a failed banking institution become fixed at the time the FDIC is appointed as receiver and the right to setoff is governed by the state of things at that time, not by conditions thereafter arising. *Grant County Savings*, 770 F. Supp. at 1376.

48. Therefore, **FDIC-R** has an absolute duty to pay damages for repudiation of Contract pursuant to 12 U.S.C. §1821(e)(3)(A)(ii), measured as of the date of the appointment of receiver, regardless of Plaintiffs' efforts to mitigate damages pursuant to  12 U.S.C. §1821(d)(14).

49. Furthermore, even though Plaintiffs had no duty to mitigate damages, they attempted to do so by seeking alternative financing to complete the improvements.  However, because of the state of the financial markets in late 2008 and early 2009, alternative financing was not available and  Plaintiffs' damages could not be mitigated.  See Affidavit of Michael B. Edwards at ¶ 13.

**<u>Entitlement to Prejudgment Interest</u>**

50.  In  addition  to  the  award  of  the  damages  for
dimunition  to  the  Placida  Property  caused  by  the  **FDIC-R's**
repudiation of the Loan, **Placida** seeks pre-judgment interest on any
dimunition award measured from the date of repudiation through the
date of judgment. *<u>FDIC v. Hickey</u>*, 2010 WL 5151327 (E.D.N.Y., Dec.
13, 2010);  *<u>Waterview Management Co. v. FDIC</u>*, 257 F. Supp.2d 31
(D.D.C. 2003) (holding that Section 1821(e)(3)does not prohibit the
award of prejudgment interest).

WHEREFORE,  Plaintiffs demand entry of Summary Judgment
against  Defendant,  **FDIC-R**  in  the  amount  of  $1,632,000,  for
prejudgment interest, for an award of prevailing party attorney's
fees pursuant to the Loan Documents, costs of this action, ordering
the same to be setoff against the Note, Mortgage, Construction Loan
Agreement and Guaranties, and for such other relief as the Court
deems proper.

**<u>Certificate of Service on Following Page</u>**

## Certificate of Service

I CERTIFY that a copy of the foregoing has been provided via CM/ECF to Michael H. Rosen, Attorney for Defendant, 201 E. Kennedy Blvd, Suite 600, Tampa, Florida 33602 on April 21, 2011.

**THE EDWARDS LAW FIRM, PL**
**1901 Morrill Street**
**Sarasota, Florida 34236**
**Telephone: 941-363-0110**
**Facsimile: 941-952-9111**
**sedwards@edwards-lawfirm.com**
**Counsel for Plaintiffs**


**By: /s/ Sheryl A. Edwards**
      **Sheryl A. Edwards**
      **Florida Bar No.: 0057495**