## BASS & ASSOCIATES, INC.
### CONSULTING APPRAISERS • PLANNERS • ECONOMISTS

VENICE OFFICE
362 Center Court
Venice, Florida 34285-5509
Phone: (941)496-4114
Fax: (941)496-4884
Tlhinevbass@daystar.net
Send Mail to Main Office

Tracy L Hiney, CRA/EAC
State-Certified General Appraiser RZ 2314

Stephen Garcia
State-Certified Res. Appraiser RD 5620

MAIN OFFICE
1953 Eighth Street
Sarasota, Florida 34236-4226
Phone: (941)954-7553
Fax: (941)952-9440
Rikbass@comcast.net

Richard W. Bass, MAI / AICP / EAC
State-Certified General Appraiser RZ 348

Robert J. Fletcher, MAI / AICP / CCIM
State-Certified General Appraiser RZ 2463

Susan Fletcher
State-Certified General Appraiser RZ 3923

# A SPECIAL PURPOSE RETROSPECTIVE APPRAISAL ASSIGNMENT

## A DIMINUTION IN VALUE  APPRAISAL
## OF THE PROPERTY AT
## 2881 PLACIDA ROAD
## GROVE CITY, FLORIDA  34224

### FOR
### MICHAEL AND SHERYL EDWARDS
### PLACIDA PROFESSIONAL CENTER, LLC
### 1901 MORRILL STREET
### SARASOTA, FLORIDA, 34236

### DATE OF SUMMARY APPRAISAL REPORT
### February 28, 2011

### RETROSPECTIVE DATE OF VALUE
### October 31, 2008

### FILE #10-280

EXHIBIT
A
Bass 2-25-11

## BASS & ASSOCIATES, INC.
### CONSULTING APPRAISERS • PLANNERS • ECONOMISTS

VENICE OFFICE
362 Center Court
Venice, Florida 34285-5509
Phone: (941)496-4114
Fax: (941)496-4884
Tlhineybass@daystar.net

Send Mail to Main Office

Tracy L Hiney, CRA/EAC
State-Certified General Appraiser RZ 2314

Stephen Garcia
State-Certified Res Appraiser RD 5620

MAIN OFFICE
1953 Eighth Street
Sarasota, Florida 34236-4226
Phone: (941)954-7553
Fax: (941)952-9440
Rlkbass@comcast.net

Richard W. Bass, MAI / AICP / EAC
State-Certified General Appraiser RZ 348

Robert J. Fletcher, MAI / AICP / CCIM
State-Certified General Appraiser RZ 2463

Susan Fletcher
State-Certified General Appraiser RZ 3223

February 28, 2011

Michael and Sheryl Edwards
Placida Professional Center, LLC
1901 Morrill Street,
Sarasota, FL 34236

Re:     **A Diminution In Value Appraisal Assignment**
        **A Retrospective Appraisal**
        **The property at 2881 Placida Road**
        **Grove City, Florida  34224**

Dear Mr. and Mrs. Edwards:

As requested, we have conducted the required investigation, gathered necessary data, and made certain analyses that have enabled us to form several related opinions of value for the above-captioned property.  The retrospective value opinions developed include:

- the AS IF completed value as of October 31, 2008
- the AS IS value without repudiation as of October 31, 2008
- the AS IS value with repudiation as of October 31, 2008

The subject of this report is located along the east side of Placida Road, about 200 feet north of the intersection with San Casa Drive, in the Grove City area of unincorporated Charlotte County.  The property address is 2881 Placida Road.

The subject property consists of 67,383 square feet of land zoned for commercial use.  The subject was being  improved with three commercial buildings containing a total of 17,600 square feet usable area, plus common areas and associated site improvements.  The vertical improvements consist of two one-story buildings containing 2,500 square feet each and a two-story building containing 12,600 SF.  The property is designed for multi-tenant office use, with units of about 1,250 +/- square feet each.

---

BASS & ASSOCIATES, INC.

Michael and Sheryl Edwards
February 28, 2011
Page 2

This summary appraisal report sets forth the identification of the subject property, the assumptions and limiting conditions, pertinent facts about the area and subject, comparable data, and the reasoning leading to the conclusions set forth. Three approaches to value were used to render the "as if" completed retrospective value opinion

Construction of the subject was halted as of the date of value. Construction was halted due to repudiation of the construction loan by the FDIC. The subject's condition as of that time is that it was approximately 70% completed. The property has been vacant and almost without maintenance since that time.

The purpose of this appraisal is to render an opinion of the diminution-in-value the subject property has suffered due to the loan repudiation. To render our value opinion, we have estimated the value of the subject "as if" completed and "as is" as of October 31, 2008.

## SUMMARY OF VALUE OPINIONS

| | |
|---|---|
| Before Value "As If" Completed | $3,400,000 |
| Pro Rata Remainder Value after Repudiation | $2,400,000 |
| Cost to Complete | $1,000,000 |
| Remainder Value after Repudiation, no financing | $ 768,000 |
| Diminution-in-Value | $1,632,000 |

Once you have had an opportunity to review the attached appraisal, should you have any questions please do not hesitate to contact me.

This letter must accompany the attached Retrospective Appraisal Report consisting of 83 pages plus the related addendum, in order for the value opinions set forth to be considered valid.

Respectfully submitted,

*Richard W. Bass*

Richard W. Bass, MAI/AICP/EAC
State-Certified General Appraiser RZ 348

Attachment

BASS & ASSOCIATES, INC.

# TABLE OF CONTENTS

Cover Page
Table of Contents
Certificate(s) of Appraisal
General Assumptions, Limiting & Hypothetical Conditions

## APPRAISAL REPORT                                            PAGE NO.

Summary of Salient Facts ........................................ 1
Opinions of Value ............................................... 1
Purpose, Use and Users of the Appraisal ........................ 2
Appraisal Problem ............................................... 2
Marketing Time .................................................. 2
Definition of Market Value ...................................... 2
    Principle of Substitution ................................... 3
    Principle of anticipation ................................... 3
    Detrimental Conditions ...................................... 3
    Market Resistance ........................................... 3
    Stigma ...................................................... 4
Appraisal and Valuation Date .................................... 4
Property Rights Appraised ....................................... 4
Scope of the Assignment ......................................... 4
Property Inspection ............................................. 5
Presentation of Date ............................................ 6
Subject Property ................................................ 7
Legal Description ............................................... 7
Property Owner Name and Address ................................. 7
Property Location and Area ...................................... 7
Site Description ................................................ 8
"As If" Completed Building Description ........................... 8
"As is" Building Description ..................................... 9
Flood Zone ...................................................... 9
Zoning and Land Use ............................................. 10
Assessed Valuation and Taxes .................................... 11
History of the Subject Property ................................. 11
Regional Map .................................................... 12
Area Map ........................................................ 13
Neighborhood Area Map ........................................... 14
Subject Rendering ............................................... 15
Subject Photographs ............................................. 16
Market Area Analysis ............................................ 27
Highest and Best Use
    Tests of Highest and Best Use ............................... 28
    As if Vacant ................................................ 28
    Conclusion, as if Vacant .................................... 29
    As Improved ................................................. 29
    Conclusion, as Improved ..................................... 30
    Highest and Best Use Conclusion ............................. 30

BASS & ASSOCIATES, INC.

Approaches to Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
    Cost Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
    Sales Comparison Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
    Income Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  31
    Reconciliation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32
Applicable Approaches to Value "As If" Completed Condition . . . . . . . . . . . .  32
Approaches to Value Omitted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32
Sales Comparison Approach - Site Valuation . . . . . . . . . . . . . . . . . . . . . .  33
    Vacant Comparable Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34
Vacant Sales Location Map . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  42
Vacant Sales Adjustment Grid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  43
Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44
    Property Rights, Financing and Condition of Sale . . . . . . . . . . . . . . . .  44
    Market Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44
    Site Size . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44
    Location . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44
    Zoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44
    Development Potential . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  44
Sales Comparison Approach Site Value Indication . . . . . . . . . . . . . . . . . . .  45
    Cost Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46
    Entrepreneurial Incentive . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46
    Depreciation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  46
    Replacement Cost Chart . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  47
    Value Indication Cost Approach . . . . . . . . . . . . . . . . . . . . . . . . . . .  47
Sales Comparison Approach - Improved Property . . . . . . . . . . . . . . . . . . . .  48
    Improved Comparable Sales . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  49
    Improved Sales Adjustment Grid . . . . . . . . . . . . . . . . . . . . . . . . . . .  57
Adjustments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58
    Property Rights, Financing and Condition of Sale . . . . . . . . . . . . . . . .  58
    Market Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58
    Buildings Size . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58
    Location . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58
    Zoning . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58
    Age / Quality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  58
Sales Comparison Approach Value Indication . . . . . . . . . . . . . . . . . . . . . .  59
Income Approach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  60
    Subject Listings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  60
    Market Rental Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  60
    Rent Comparables . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  61
    Market Rental Rate Indication . . . . . . . . . . . . . . . . . . . . . . . . . . . .  64
    Potential and Effective Gross Income . . . . . . . . . . . . . . . . . . . . . . .  64
    Vacancy and Collection Losses . . . . . . . . . . . . . . . . . . . . . . . . . . .  64
    Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  64
    Pro Forma - Stabilized . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  65
    Capitalization Rate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  65
    Estimating the Capitalization Rate . . . . . . . . . . . . . . . . . . . . . . . . .  65
    Market Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  66
    Built-up Technique . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  66
    Income Approach Value Indication . . . . . . . . . . . . . . . . . . . . . . . . .  66

BASS & ASSOCIATES, INC.

Correlation and Conclusion "As If" Completed ......................... 67
Costs to Complete ................................................ 68
    Remaining Construction Costs ............................... 68
    Lease Up Period .......................................... 68
Pro Rata "As Is" Market Value Opinion ............................. 69
Discount for Project Interruption - After Repudiation ................... 70
    Analysis of Comparable Sales .............................. 72
    Estimation of Discount ..................................... 80
Subject Value After Loan Repudiation .............................. 80
Rule 26(a)(2) .................................................... 81

**ADDENDUM** ...................................................... 82

    Legal Description
    Regional/County Data
    Flood Zone Data
    Zoning and Land Use Data
    Appraisers' Qualifications

BASS & ASSOCIATES, INC.

# CERTIFICATE OF APPRAISAL

I certify that, to the best of my knowledge and belief:

The statements of fact contained in this report are true and correct.

The reported analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with the requirements of the Code of Professional Ethics & Standards of the Professional Appraisal Practice of the Appraisal Institute, which include the Uniform Standards of Professional Appraisal Practice.

The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representative.

I have no present or prospective interest in the property that is the subject of this report, and no personal interest with respect to the parties involved.

I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

I have made a personal inspection of the property that is the subject of this report.

As of the date of this report, I have completed the continuing education program of the Appraisal Institute.

Robert Fletcher, MAI / AICP / CCIM, State-Certified General Appraiser RZ 2463 has provided significant professional assistance to the person(s) signing this report.

By:    Richard W. Bass, MAI/AICP/EAC
State-Certified General Appraiser RZ 348

File #10-280

February, 2011

BASS & ASSOCIATES, INC.

# GENERAL ASSUMPTIONS
# AND LIMITING CONDITIONS

BASS & ASSOCIATES, INC.

## GENERAL ASSUMPTIONS AND LIMITING CONDITIONS

## VALUATION ASSIGNMENT

A "valuation assignment" is one in which an appraisal is sought. An "appraisal" is defined as:

"the act or process of developing an opinion of value; an opinion of value."

All or some of the following General Assumptions and Limiting Conditions may apply based on the property type under appraisal:

1.  As real estate analysts and appraisers, no responsibility is assumed for the legal description or for matters including legal or title considerations. As we are not attorneys, any interpretations and opinions rendered are not legal opinions. Title to the property is assumed to be good and marketable unless otherwise stated.
2.  Unless otherwise set forth in our opinion of value, the property is appraised free and clear of any or all liens or encumbrances.
3.  Responsible ownership and competent property management are assumed.
4.  The information furnished by others is believed to be reliable. However, no warranty is given for its accuracy.
5.  It is assumed that there are no hidden or unapparent conditions of the property, subsurface, surface, or structures, that render it more or less valuable. No responsibility is assumed for such conditions or arranging for engineering studies that may be required to discover any defects. We are not trained as home inspectors or building inspectors.
6.  It is assumed that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless noncompliance is stated, defined, and considered in the appraisal.
7.  It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless a nonconformity has been stated, defined, and considered in the appraisal.
8.  Possession of a printed report or a copy thereof, does not carry with it the right of publication or duplication. It may not be used or relied upon for any purpose by any individual, group, company, governmental entity or corporation other than the identified intended user(s) as set forth within the report.
9.  The appraiser herein by reason of rendering an opinion of value is not required to give further consultation, testimony or be in attendance in any court with reference to the property in question unless such arrangements are in the original engagement agreement or separately agreed to by both parties to said agreement.
10. Should a third party call upon the appraiser for testimony, either expert testimony or fact testimony, as a result of the valuation assignment, the client is responsible for the appraisers' professional fees and direct expenses.
11. Neither all nor any part of the contents of the appraisal, expressed either orally or in writing (especially any opinion as to value), the identity of the appraiser or the firm with which the appraiser is connected shall be disseminated to the public through advertising, public relations, news, sales materials, or other media without the prior written consent and approval of the client and the appraiser.
12. The opinion of the appraiser is in no way contingent upon the reporting of a predetermined direction in value or specified value.
13. Date of value to which conclusions and opinions expressed in this report apply, is set forth in the report. Further, the dollar amount of the value opinion herein rendered is based upon the purchasing power of the U. S. dollar existing on that date.

## BASS & ASSOCIATES, INC.

14.   The appraiser assumes no responsibility for economic or physical factors which may affect the opinion of the appraiser occurring at some date after the date of the letter transmitting this report.

15.   The American with Disabilities Act ("ADA") became effective January 26, 1992. I have not made a specific compliance survey and analysis of the property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property, together with a detailed analysis of the requirements of the ADA, could reveal that the property is not in compliance with one or more of the requirements of the Act. If so, this fact could have a negative effect upon the value of the property. Since I have no direct evidence relating to this issue, I did not consider a possible noncompliance with the requirements of ADA in estimating the value of the property.

16.   The appraiser reserves the right to make adjustments to the valuation of the subject property, as may be required by consideration of additional reliable data that may or may not have been discovered at the time of the appraisal or which becomes available after the date of value.

17.   The opinion of value represents the best opinion of the analysts as to the value of the interests considered and upon which said value is based.

18.   The appraiser has no past, present or contemplated future undisclosed interest in the subject property or parties to the valuation assignment.

19.   The appraisal has been made in conformity with the Uniform Standards of Professional Appraisal Practice, the Florida Real Estate Commission - Real Estate Appraisal Sub-Committee as a Certified Appraisal Report; as well as the Appraisal Institute supplemental standards.

20.   Personal inspection was made of the subject property and comparables relied upon in this valuation assignment.

21.   Unless otherwise stated, no one assisted the appraiser(s) in the analysis, conclusions, and opinions concerning real estate valued.

22.   All furnishings and equipment, unless specifically indicated, have been disregarded by the appraiser. Only the real estate has been considered.

23.   If no survey of the subject property is provided to the appraiser, it is assumed the legal description and/or current plat obtained from the public records closely delineates said property.

24.   Physical condition of any improvements located above grade or below grade on the subject property is based on visual inspection. No responsibility or liability is assumed for non-readily observable features or for the soundness of structural members or below grade features.

25.   Certain data used in compiling the requested opinion of value will be furnished by the client or others. Such data is assumed to be reliable and is verified when practical. No representations are herein provided as to correctness or accuracy of such third party data.

26.   A diligent effort to verify each comparable sale data was made. However, if personal contact is not possible, public records will be relied upon for verification. Further, it is recognized that in the confirmation process there exists the potential for misinformation, misleading information and fraudulent information being provided to the appraiser. Should such misinformation, in any form, be provided to the appraiser, no responsibility or liability is assumed by the appraiser.

27.   Any photographs which may be a part of the valuation assignment are intended to reflect the general character of the area, the subject and/or comparable data. Said photographs are for illustrative purposes only.

28.   Any maps or other graphic devices are intended to be illustrative and general in character and location. The subject property and any comparable properties are best identified by official Appraisers Parcel Number issued by the applicable Office of the County Property Appraiser.

29.   Payment of the appraisal fee and any direct expenses as set forth in the engagement agreement constitutes the level of exposure of the appraiser individually or appraisal firm.

BASS & ASSOCIATES, INC.

It is mutually agreed that nonpayment of the professional fee(s) and/or applicable direct expenses as set forth in the engagement agreement may result in the filing of a lien upon the subject property to secure payment of said fees and costs as well as any other applicable remedies at law.

30. If a written report is provided as part of the valuation assignment, used to support an oral opinion of value, said report is conditioned as a preliminary report only and subject to change including Condition Number 16 above, as well as any relevant interpretation or reinterpretation of the applicability of any provision of the Uniform Standards of Professional Appraisal Practice, as may be amended form time to time.

31. Particularly applicable to any assignment which has the potential to result in litigation, any such written appraisal report is done to support said oral testimony only and can only be relied upon as supporting said testimony.

32. During the research and analysis process of the valuation assignment, additional "specific" assumptions and/or limiting conditions may be appropriate for the opinion value sought. If so, they will be set forth separately to specifically identify same.

33. Confidentiality of the appraiser/client relationship is controlled by Florida State Statutes and applicable implementing Rules, as well as those of professional membership in the Appraisal Institute. The appraiser may not divulge confidential data to third parties without consent of the client (customer). Our understanding of applicable laws and rules of the State of Florida is that they are more restrictive than those of the Gramm-Leach-Bliley Act of 1999.

34. All maps, graphics and charts are intended to be illustrative only.

Hypothetical Condition is defined as:

That which is contrary to what exists but is supposed for the purpose of analysis. Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis. A hypothetical condition may be used in an assignment only if:

o    Use of the hypothetical condition is clearly required for legal purposes, for purposes of reasonable analysis, or for purposes of comparison;
o    Use of the hypothetical condition results in a credible analysis; and
o    The appraiser complies with the disclosure requirements set forth in USPAP for hypothetical conditions. (USPAP, 2002 ed.)

A.    The subject was without any significant defects in design or construction as of the date of value and is valued "as if" completed per plans and specifications.

B.    The cost to complete construction of the subject as of the date of value was equal to the remaining, unspent construction budget and related expenses.

C.    For the "as if" completed condition we assume a nominal 60 day time frame to complete the project.

D.    The percentage of completed is an estimate based on observation, a review of building plans, and discussion with the developer.

BASS & ASSOCIATES, INC.

## SUMMARY OF SALIENT FACTS AND IMPORTANT CONCLUSIONS

**PROPERTY TYPE:**              Commercial

**PROPERTY IDENTIFICATION:**    41-20-17-217001

**LOCATION:**                   The east side of Placida Road, about 200 feet north of San Casa Drive, in the Grove City area of unincorporated Charlotte County.   The property address is 2881 Placida Road.

**OWNER:**                      Placida Professional Center, LLC

**DATE OF VALUE:**              October 31, 2008

**DATE OF REPORT:**             February 28, 2011

**PROPERTY RIGHTS APPRAISED:**  Fee Simple Value

**SERVICES:**                   Central water, sewer, electric and phone

**LAND SIZE:**                  67,383 SF

**IMPROVEMENTS:**               Improved with three buildings, including two 2,500 SF one-story office buildings and one 12,600 SF two-story building. The buildings are divided among 14 units containing 1,250 SF or 1,260 SF each.   Total of 17,600 SF usable space.

**LAND USE:**
    **PRESENT USE:**          Commercial
    **ZONING:**               CG; Commercial General
    **FUTURE LAND USE:**      Commercial Corridor

**HIGHEST AND BEST USE:**
    **AS VACANT**             Commercial Development
    **AS IMPROVED**           Current Use

## VALUE OPINIONS

| | |
|---|---|
| 2008 AS IF Completed Value | $3,400,000 |
| 2008 AS IS Value, Before Loan Repudiation | $2,400,000 |
| 2008 AS IS Value, After Repudiation | $ 768,000 |
| DIMINUTION IN VALUE | $1,632,0000 |

BASS & ASSOCIATES, INC.

## PURPOSE, USE AND USERS OF THE APPRAISAL

The purpose of the appraisal is to render several opinions of value and to be prepared to render oral opinions at mediation and/or trial.  The function of this report is to assist the client with internal business decisions regarding the subject property and pending civil litigation. This appraisal  is being prepared for use by Michael and Sheryl Edwards, their agents and associated entities, as well as a court of competent jurisdiction.

## APPRAISAL PROBLEM

The appraisal problem is to set forth retrospective opinions of the market value for the fee simple interest in the subject under different scenarios.   These scenarios include:

- the AS IF completed value as of October 31, 2008
- the AS IS value without repudiation as of October 31, 2008
- the AS IS value with repudiation as of October 31, 2008

## MARKETING TIME

Marketing time is defined as the amount of time it might take to sell a property at the estimated market value during the period immediately after the effective date of an appraisal.

Marketing time is more than "time" itself.  It is also a function of "price" and "use."  With respect to the subject, we estimate the marketing time to be between six and twelve months when appropriately exposed and listed (pricing) on the open market as of October 2008.

## DEFINITIONS

**Market Value** is defined as follows:

*"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:*

*1.      buyer and seller are typically motivated;*
*2.      both parties are well informed or well-advised, and acting in what they consider their best interests;*
*3.      a reasonable time is allowed for exposure in the open market;*
*4.      payment is made in terms of cash in United States dollars or in terms of financial arrangements comparable thereto; and*

BASS & ASSOCIATES, INC.

5.    *the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.*[1]

**Principle of Substitution** is defined as:

*The appraisal principle that states that when several similar or commensurate commodities, goods, or services are available, the one with the lowest price will attract the greatest demand and widest distribution.  This is the primary principle upon which the cost and sales comparison approaches are based.*[2]

**Principle of Anticipation** is defined as:

*The perception that value is created by the expectation of benefits to be derived in the future.*[3]

**Detrimental Condition** is defined as:

*Any event or condition that damages real estate.*[4]

To date, there are some 240 events or conditions identified as "detrimental conditions."

**Market Resistance** is defined as consisting of four elements:

1.    *Stigma*
2.    *Adverse Market Reaction*
3.    *Uncertainty of Remediation Effectiveness, and*
4.    *Concern Over Third-Party Liability*[5]

Based on my preliminary understanding of the situation,  the adverse impacts  to the subject property consist of a Class IV Temporary Condition and Class V Imposed Condition, caused by the FDIC loan repudiation.

Detrimental Conditions appraisals are atypical assignments. It is my understanding that case law requires that the appraiser demonstrate the diminution-in-value via market data. The process of merely considering the cost-to-correct a defect or condition and/or the cost to remediate the defect or condition does not in and of itself fully address the economic impact to the property.

---

[1]    The Dictionary of Real Estate Appraisal, Fourth Edition, The Appraisal Institute, 2003.

[2]    The Appraisal of Real Estate, 13th Edition, Appraisal Institute, 2009.

[3]    Ibid.

[4]    Valuation of Detrimental Conditions in Real Estate, Appraisal Institute,1998.

[5]    Valuation of Detrimental Conditions in Real Estate, 1998, Appraisal Institute

BASS & ASSOCIATES, INC.

**Stigma** as the term relates to real estate is:
> *Referring to an intangible psychological impact on value or marketability because of increased risk or future uncertainty.*[6]

**Stigma** has also been defined as:
> *"A reduction in value stemming from public fear of contamination" or "A condition that detracts from the value of a property."*

Stigma is commonly measured as a percentage of the undamaged value.

## APPRAISAL & VALUATION DATE

Date of Valuation:                          October 31, 2008

Date of Appraisal:                          February 28, 2011

## PROPERTY RIGHTS APPRAISED

The property rights being appraised consist of the fee simple interest.  The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or its title; nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable.  Consideration has been given to legal restrictions such as land development regulations and recorded easements and deed restrictions, if any.

## SCOPE OF THE ASSIGNMENT

The scope of this assignment included research and analysis of market information over the past few years in order to render retrospective value opinions. As such, this appraisal must be read in the context of such market conditions in effect in 2008.

First, we analyzed current and historical market conditions in the subject market in order to determine the highest and best use of the subject.  Following this, three approaches to value were considered: the Cost Approach, Income Approach and Sales Comparison Approach.  All three approaches to value were utilized in the valuation of the "as if" completed condition.

For the "as is" condition, we evaluated the degree of completion, deducted the dollars to complete from the "as if" completed value, to derive an indication of value of an active, but partially completed project.  This is basically a pro rata value.

---

[6] Post Repair Diminution in Value from Geotechnical Problems, The Appraisal Journal, January 1996.

BASS & ASSOCIATES, INC.

For the diminution-in-value analysis for the after repudiation "as is" condition, we research and analyzed likekind situations to derive a percentage adjustment to be applied to the subject.

The subject was a new commercial development project. The two smaller buildings were both nearly complete, lacking interior finishes. The larger building was about 60% complete, with exterior walls, partial partition wall systems, stubbed plumbing, roof decking completed, but without interior finishes and most other infrastructure systems. Most planned site improvements, including parking and exterior lighting, were not in place. The buildings are designed for multi-tenant use and could have been utilized as either retail or office space.

Construction of the subject was abruptly halted as of the date of value. Since that time, a period of roughly 26 months, the property has remained vacant without additional work or maintenance. This has resulted in significant physical deterioration, vandalism, additional permitting and design costs and a market stigma on the property as a "failed" development.

In order to estimate the retrospective "as is" value of the subject we first estimated the "as if" completed value. This involved research and analysis of contemporary sales of similar commercial buildings, with particular attention to new construction and multi-tenant centers. The search involved properties in Sarasota and Charlotte Counties. We also researched market lease rates and terms for similar commercial spaces, again focusing on new or high quality space. Most rental information was gathered in the immediate subject market area and the nearby McCall Road corridor.

The "as is" value before repudiation, was estimated by subtracting the remaining costs to construct when work was halted. Essentially, this is a pro rata value of the subject.

For the diminution-in-value, we have investigated sales of partially constructed projects and the discounts applied to such purchases.

Comparable sales and rental information were analyzed, particularly with regard to location and market appeal. We developed an estimate of the sales value of the subject utilizing direct comparison to other recent sales of retail and office properties throughout urban areas of Sarasota and Charlotte Counties. Other data were gathered from various sources, including the Sarasota and Charlotte County public records, the property owners, real estate professionals and local market participants. Various public and private sources were used to find and confirm real estate data.

## PROPERTY INSPECTION

The subject was inspected on January 17, 2011. A representative of the property owner accompanied the appraiser.

BASS & ASSOCIATES, INC.

## PRESENTATION OF DATA

BASS & ASSOCIATES, INC.

# SUBJECT PROPERTY

## LEGAL DESCRIPTION

The legal description of the subject is lengthy and is included in the addenda of this report. The reader is also referred to the maps and photographs included elsewhere in this report for additional information.

Although no title information has been provided to the appraiser, to the best of our knowledge there are no encroachments or restrictions which would negatively affect the market value of the subject.

## PROPERTY OWNER NAME AND ADDRESS

According to the public records of Charlotte County, Florida, the owner of the subject property is:

> Placida Professional Center, LLC
> 1515 Ringling Blvd., Suite 840
> Sarasota, FL 34236

## PROPERTY LOCATION AND AREA

The subject is located along the east side of Placida Road, about 200 feet north of San Casa Drive, in the Grove City area of unincorporated Charlotte County.  The property address is 2881 Placida Road.

Placida Road is a four-lane major collector roadway running generally north-south between McCall Road / CR 776 and the Placida Area, a distance of about 10 miles.  It is the only connecting roadway between these areas.  Florida Avenue and Kentucky Avenue, south and north of the subject, respectively, are both two lane local roadways.  These roads lead eastward from Placida Road into a residential neighborhood immediately adjacently.  San Casa Road is a two-lane collector roadway between Grove City and McCall Road and the intersection of San Casa and Placida Roads is signalized. Placida Road is a generally commercial roadway, improved with a variety low-density commercial properties, particularly in the immediate area of the subject.

The immediate area of the subject is improved with a variety of smaller commercial and institutional properties, intermixed with older low-density residential properties.

BASS & ASSOCIATES, INC.

# PROPERTY DESCRIPTION

## SITE DESCRIPTION

Location:
The subject is located along the east side of Placida Road, about 200 feet north of San Casa Road, in the Grove City area of unincorporated Charlotte County. 2881 Placida Road.

Area, Shape and Dimensions:
The site contains about 67,383 square feet. The site is rectangular in shape slightly above roadway grade. The property includes about 300 feet of frontage along Placida Road and about 150 along both Kentucky Avenue and Florida Avenue. The subject also includes about 300 feet of frontage along Eighth Street, east of the subject.

Access:
The property has a single commercial driveway to Florida Avenue. A second drive is planned to Kentucky Avenue. These are the access points laid out in the current site plan and no others are practical.

Drainage:
The subject appears to be adequately drained. There is an onsite, open retention facility.

Utilities:
Public water and sewer service, electrical power, telephone and cable television service are available to the site.

Easements and Encroachments:
No easements or encumbrances which would negatively affect the property value have been noted.

## "AS IF" COMPLETED BUILDING DESCRIPTION

The following describes the subject property "as if" completed, the way is was planned and permitted.

The subject was being improved with a 12,600 SF two-story multi-tenant office building and two one-story office buildings, each containing 2,500 SF. There is a total of 17,600 SF of office space, plus associated site improvements. As of the date of value the overall project was roughly 70 plus percent completed, with an estimated $875,000 of remaining expenditures before it could be occupied.

The main building is a two-story structure, with concrete block construction on a slab foundation. The exterior walls are a painted stucco finish. The roof is gabled with a metal surface. Windows and doors are all good quality commercial grade with aluminum framing. The building is relatively evenly divided between 10 units, five per floor. Each unit contains 1,260 SF of usable area and is designed for office uses, with a pair of bathrooms included.

BASS & ASSOCIATES, INC.

The two front buildings are both single story structures containing 2,500 SF each and designed to be divided between two units of equal size (1,250 SF each). These units are likewise finished for office space, with a bathroom in each unit. The reader is referred to the floor plans included in this report.

Unit interiors are all assumed to have been finished to a "vanilla shell" condition, with interior drywall shells, finished electrical, plumbing and air-conditioning systems and working bathrooms. There is assumed to be no other interior partitioning, fixtures or floor covering. All units in all buildings are separately metered and include central air conditioning. The main building includes two exterior stairwells for access to the second floor. There is no interior connection between the floors. There is also an elevator, with an exterior entrance. The layout of each unit is open and they are generally in good condition and function well.


## "AS IS" BUILDING CONDITION

The "as is" building condition (as of October 2008) is assumed to have been in a condition essentially 70% completed, and in an active state of construction. The photographs of the subject improvements best illustrates their respective condition.


## FLOOD ZONE

According to flood hazard maps compiled by the Federal Emergency Management Agency, the subject is located in zone "X". This designates areas of minimal flooding.

BASS & ASSOCIATES, INC.

# ZONING AND LAND USE

### Zoning Designation: CG; Commercial General

The subject is located within the CG; Commercial General zoning district of unincorporated Charlotte County.  The district description for the Commercial General district has been included within the addenda to this report.  Briefly, this district is described as follows.

> *The CG district is intended to provide areas in which the customary and traditional conduct of trade, retail sales and commerce may be carried on without disruption by the encroachment and intrusion of incompatible residential uses and protected from the adverse effects of undesirable industrial uses.*

The reader is referred to the report addenda for specific development standards.

### Land Use Designation: Commercial Corridor

Development within unincorporated Charlotte County is governed by the Charlotte County Comprehensive Plan.  The purpose and intent of the plan is to provide for controlled growth in a manner which does not adversely affect the character or quality of life within the governmental limits.

The subject is located within an area designated Commercial Corridor.  The zoning of the subject is consistent with the adopted Land Use Plan.

It should be noted that land use regulations, including zoning and comprehensive plan regulations, frequently change.  Although the information summarized in this report is deemed reliable, no warranty for its accuracy is implied.  The reader is referred to the report addenda for specific development standards.

BASS & ASSOCIATES, INC.

### ASSESSED VALUATION AND TAXES

The property identification number assigned to the subject by the Charlotte County Property Appraiser is listed below.

The 2008 tax information is as follows:

| PARCEL | TOTAL ASSESSED VALUE, 2008 | TOTAL REAL ESTATE TAX, 2008 |
|---|---|---|
| 41-20-17-217001 | $273,105 | $6,988.55 |

### HISTORY OF SUBJECT

The most recent transfer of the subject was on February 28, 2007.  This was a Warranty Deed from Michael and Sheryl Edwards to Placida Professional Center, LLC, as recorded in OBK 3123 PG 1402 of the public records of Charlotte County.  The recorded price was $400,000.   However, this transfer was between related entities, in preparation for development of the property, and is not considered an arm's length transaction.

Prior to this transfer, the property was transferred from Ralf Bzura to Michael and Sheryl Edwards on January 4, 2005 for a recorded price of $500,000, as recorded in OBK 2613 PG 122. This is understood to be an arms length transaction and representative of market prices at that time.

Pre-construction lease prices begun in June of 2007, with a range of $18/SF to $22/SF, net. As of the date of value the subject units were listed for lease $13/SF to $20/SF on a net basis.

BASS & ASSOCIATES, INC.



**REGIONAL MAP**

BASS & ASSOCIATES, INC.



# AREA MAP

BASS & ASSOCIATES, INC.



**AREA MAP**

BASS & ASSOCIATES, INC.



**SUBJECT RENDERING**

BASS & ASSOCIATES, INC.

---

# SUBJECT PHOTOGRAPHS

Taken by Robert Fletcher

---

BASS & ASSOCIATES, INC.



Aerial View of the Subject

BASS & ASSOCIATES, INC.



Aerial View of the Subject

BASS & ASSOCIATES, INC.



Easterly View of the Subject from Placida Road



Easterly View of the Two Front Buildings

BASS & ASSOCIATES, INC.



Southerly View of Placida Road with the Subject on the Left



Northerly View of Placida Road with the Subject on the Right

BASS & ASSOCIATES, INC.



Westerly View of a Front Building



Interior View of a Front Building

BASS & ASSOCIATES, INC.



View of Back Building



Front View of Back Building

BASS & ASSOCIATES, INC.



Interior of Second Floor



Interior of Second Floor

BASS & ASSOCIATES, INC.



Exterior View of Northern Stairwell



Southerly View of Second Floor Walkway

BASS & ASSOCIATES, INC.



First Floor Interior



First Floor Interior

BASS & ASSOCIATES, INC.



View of Subject Site from Second Floor



Northerly View of Eighth Street with the Subject on the Left

BASS & ASSOCIATES, INC.

## MARKET AREA ANALYSIS

A market is generally defined as *"(1) A set of arrangements in which many buyers and sellers are brought together through the price mechanism. (2) A gathering of people for the buying and selling of things; by extension, the people gathered for this purpose."* [7]

The market area is defined as *"The geographic or locational delineation of the market for a specific category of real estate, i.e., the area in which alternative, similar properties effectively compete with the subject property in the minds of probable, potential purchasers and users."* [8]

The subject is located along the east side of Placida Road, about 200 feet north of San Casa Road, in the Grove City area of unincorporated Charlotte County. The subject address is 2881 Placida Road.

Placida Road is a four-lane major collector roadway running generally north-south between McCall Road / CR 776 and the Placida Area, a distance of about 10 miles. It is the only connecting roadway between these areas. Florida Avenue and Kentucky Avenue, south and north of the subject, respectively, are both two lane local roadways. These roads lead eastward from Placida Road into a residential neighborhood immediately adjacent. San Casa Road is a two-lane collector roadway between Grove City and McCall Road and the intersection of San Casa and Placida Roads is signalized. Placida Road is a generally commercial roadway, improved with a variety low-density commercial properties, particularly in the immediate area of the subject.

The immediate area of the subject is improved with a variety of smaller commercial and institutional properties, intermixed with older low-density residential properties.

The market area is defined as the South Sarasota and Western Charlotte County areas, including the Englewood, Port Charlotte and Placida areas. The Placida Road corridor is a secondary commercial roadway, improved with a variety of older residential uses and transitioning to institutional and commercial uses in some areas. This district primarily serves the greater Englewood and Placida areas.

---

[7]   *The Dictionary of Real Estate Appraisal*, Fourth Edition, Appraisal Institute, 2002.

[8]   Ibid.

BASS & ASSOCIATES, INC.

# HIGHEST AND BEST USE

Highest and Best Use is defined by the Appraisal Institute in, The Appraisal of Real Estate as follows:

> The reasonably probable and legal use of vacant land or an improved property that is physically possible, appropriately supported, and financially feasible and that results in the highest value.[9]

Implied in this definition is that the determination of highest and best use takes into account the contribution of a specific use to the community and community development goals, as well as the benefits of that use to individual property owners. Hence, in certain situations the highest and best use of land may be for parks, green belts, preservation, conservation, wildlife habitats and the like.

## TESTS OF HIGHEST AND BEST USE

In analyzing the Highest and Best Use of the subject property, a number of physically possible uses are considered. These physically possible uses are then analyzed in light of the highest and best use tests of legality, financial feasibility and maximal productivity of the property.

The tests of highest and best use are normally applied to a property both "as if" vacant and ready for development and as currently improved. As the subject is improved with three office buildings, both tests are applied.

### Highest and Best Use "As If Vacant"

**Physically Possible**
The subject site contains 67,383 square feet. The site is rectangular in shape, generally flat, level and slightly above the grade of the adjacent roadway.

Unless noted elsewhere, there is no known environmental contamination of the subject site. The subject is large enough to support the types of uses permitted within this zoning district. Overall, the subject can physically support a wide variety of uses.

**Legally Permissible**
The subject is located in an area designated Commercial Corridor in the Charlotte County Comprehensive Plan. The subject is also located in the CG; Commercial General zoning district. The CG district is intended for a wide variety of office and retail commercial uses, excepting only the most intensive uses. There are no known concurrency issues restricting development of this site.

---

[9] The Appraisal of Real Estate, Thirteenth Edition, Appraisal Institute 2008.

BASS & ASSOCIATES, INC.

**Financially Feasible**

For a project to be financially feasible, it has to provide a positive rate of return for an investor. Investors look to the marketplace to determine the likely investment return of any given property and the riskiness of the investment. These are functions of a property's location, whether it meets a market need, its site utility and a number of other factors.

The legally permissible uses of the subject include a wide variety of nonresidential uses, including retail, office and institutional uses. Residential and industrial uses are not permitted. The surrounding areas along Placida Road are developed with a mixture of residential and lighter commercial uses, reflecting divided zoning areas. These factors indicate a continued demand for properties like the subject.

Development at the earlier date was apparently financially feasible, based on evident demand and lease rates

**Maximally Productive**

Among the financially feasible uses, that which would likely provide the highest rate of return is the highest and best use.

As of the date of value, demand and projected income for the subject space indicated a highest and best use of commercial or office development.

**Conclusion, as if vacant**

As of October 31, 2008 the highest and best use of the subject, as if vacant, was development with an office or similar commercial use.

**Highest and Best Use "As Improved"**

The subject is assumed to be improved with three buildings containing a total of 17,600 SF. These include a two-story building of 12,600 SF divided among 10 units of 1,260 SF each, and two 2,500 SF single story buildings each divided between two 1,250 SF units. All of the buildings are designed for office use. Site improvements include surface parking, exterior lighting and other typical commercial site improvements. All of the units are assumed to be finished out in a "vanilla shell" condition. All are assumed to be new and completed as of the October 31, 2008, the date of value. The improvements are further assumed to be free of any significant defects of design or construction and to be physically and legally ready for use.

**Physically Possible**

The subject site functions well for the existing use, with no noted functional or external obsolescence. The buildings are new, constructed in good quality and in excellent physical condition. As noted in the "as vacant" section, the subject site can also physically support a wide variety of other uses. Overall, both the existing use and a variety of possible other uses are physically possible.

The current interior layout of the subject buildings would function well for the intended office use. The subject units, however, are currently vacant and assumed

BASS & ASSOCIATES, INC.

to be in a "vanilla shell" condition. The units will require significant tenant improvements prior to use.

**Legally Permissible**
The subject is designated Commercial Corridor in the Charlotte County Comprehensive Plan. The subject is also located in the CG; Commercial General zoning district. The CG district is intended primarily for a wide variety of retail commercial and office uses, excluding only the most intensive uses. There are no known concurrency issues restricting development or use of this site.

The legally permissible uses of the subject, as previously noted, include a range of retail and offices uses.

**Financially Feasible**
The existing improvements include three new office buildings and associated site improvements. These buildings are of good quality and design and suitable for use in the subject market. The recent development of these improvements provides evidence of their financial feasibility over the long term.

The pattern of use and development in the subject district and the market area generally provides further evidence of a market for both the sale and the operation of properties like the subject. There are several other examples of small, multi-tenant retail and office buildings in the immediate area. These neighboring properties are occupied at market-normal rates, indicting a demand for commercial and office space like the subject. We estimate use of the current improvements as designed would be more financially attractive than any alternative use, including demolition and redevelopment or significant alteration of the existing interiors. All of these factors indicate a current and continuing demand for properties like the subject.

**Maximally Productive**
The subject buildings are laid out for multi-tenant use, with units of 1,250 or 1,260 SF which can be easily combined to form larger units. It was developed with the intention to utilize as a multi-tenant office property. However, the layout is also consistent with a professional condominium and individual sale of the units.

Use of the existing improvements as a multi-tenant office property is estimated to be the maximally productive use of the subject as improved.

**Conclusion, as improved**

The highest and best use of the subject, as improved, is multi-tenant office usage.

BASS & ASSOCIATES, INC.

# APPROACHES TO VALUE

The appraiser typically estimates the property's value using three general approaches to value. These are the Cost Approach, the Sales Comparison Approach, and the Income Approach. Some properties require only one or two of the approaches to value due to property type or other circumstances. The final analysis is the reconciliation of the applied approaches to value, to arrive at a final value conclusion.

## COST APPROACH

In the Cost Approach to Value, accrued depreciation is deducted from the cost of new improvements, and then added to the land value. The resultant figure indicates the value of the whole property.

Generally, the land value is obtained through one of five different methods. Reproduction cost of the improvements is estimated on the basis of current prices for the component parts of the building, less depreciation. Depreciation is estimated by analyzing the disadvantages or deficiencies of the existing building as compared to a new building.

## SALES COMPARISON APPROACH

The Sales Comparison Approach is used to estimate the value of the land as if vacant and/or the whole property as improved. The appraiser gathers data on sales of comparable properties and analyzes the nature and condition of each sale, making logical adjustments for dissimilar characteristics. Typically, a common denominator is found. For land value, land is typically analyzed on a price per square foot, price per acre of price per unit basis. For improved properties, the common denominator may be price per square foot of gross building area, price per unit, or a gross income multiplier (GIM).

The Sales Comparison Approach gives a good indication of value when sales of similar properties are available. Properties listed for sale are sometimes utilized to establish the upper ends of value ranges or trends in pricing.

## INCOME APPROACH

The income approach to value is based on the principle of anticipation: what a prudent investor expects a property to yield creates value, which can be translated into market value for the property as a whole. The appraiser gathers income and expense data concerning both the subject and similar properties. This information is then used to develop a market-based assessment of what comparable properties' yield to their owners.

The anticipated net annual income of the subject property is capitalized to produce an indication of value. Net income is the income generated after accounting for vacancy and collection losses and typical operating expenses but before the payment of any debt service (mortgages, notes, etc.) on the real property.