UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PLACIDA PROFESSIONAL CENTER, LLC, a Florida Limited Liability Company, MICHAEL B. EDWARDS and SHERYL A. EDWARDS,**

                Plaintiffs,

vs.                                CASE NO. 8:2009 CV 02221-T30 MAP

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Freedom Bank,**

                Defendant.

_____/

**PLAINTIFFS' FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56, Federal Rules of Civil Procedure, and Local Rule 3.01 for the Middle District Court of Florida, Plaintiffs, **PLACIDA PROFESSIONAL CENTER, LLC, a Florida Limited Liability Company ("Placida"), MICHAEL B. EDWARDS and SHERYL A. EDWARDS, (collectively "Edwards")** hereby file their First Amended Motion for Partial Summary Judgment on Count II of the First Amended Complaint [DKT. 21] against **FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Freedom Bank, ("FDIC-R").** Plaintiffs show that there is no genuine issue of material fact _as to the issue of liability_ of the **FDIC-R** to pay "actual, direct and compensatory" damages to Plaintiffs as requested in Count II of the First Amended Complaint and that there is no genuine issue of material fact as to _Plaintiffs entitlement to prejudgment interest_.

Therefore, Partial Summary Judgment is proper finding the **FDIC-R** liable for damages in an amount to be determined at trial, to include an award of prejudgment interest from the date of repudiation.

## THE UNDISPUTED FACTS UPON WHICH PARTIAL SUMMARY JUDGMENT SHOULD BE GRANTED

1. Plaintiff, **Placida**, is a Florida Limited Liability Company whose principal place of business is located in Sarasota, Florida. See Affidavit of Michael B. Edwards at ¶ 1. [DKT. 39]

2. **Freedom Bank** was a federally insured banking institution whose principal place of business was located in Bradenton, Florida. On or about October 31, 2008, **Freedom Bank** was closed and the **FDIC-R** was appointed as the receiver to wind up the affairs of **Freedom Bank**. See Affidavit of Michael B. Edwards at ¶ 9. [DKT. 39]

3. On or about February 28, 2007, **Placida** executed a Construction Loan Agreement, ("Construction Loan Agreement") Promissory Note ("Note") and Mortgage ("Mortgage") and other documents (collectively referred to as "the Loan") whereby **Freedom Bank** committed to lend the sum of $3,280,000.00 to **Placida** to construct a 17,600 square foot professional office center in Charlotte County, Florida ("the Placida Project") whose legal description is as follows:

2

> **Block 105, GROVE CITY SUBDIVISION, according to the plat thereof recorded in Plat Book 1, Page 4, of the Public Records of Charlotte County, Florida, together with vacated 15-foot alley described in Official Records Book 1844, Page 1557, and less state road right-of-way.**

("the Placida Property").  See Affidavit of Michael B. Edwards at ¶ 2 and Exhibit A thereto. [DKT. 39 and 39-2]

4. Pursuant to the Construction Loan Agreement, **Placida** was to construct the Placida Project pursuant to a Construction Loan Budget submitted to and approved by **Freedom Bank.**  See Affidavit of Michael B. Edwards at ¶ 3. [DKT. 39]

5. Pursuant to the Construction Loan Agreement, $240,000.00 of the principal amount of the loan was to be reserved for interest payments on the Loan during construction and during the period of time necessary to lease-up the Property. See Affidavit of Michael B. Edwards at ¶ 3. [DKT. 39]

6. Pursuant to the Construction Loan Agreement, the loan proceeds were to be used to construct improvements on the Property and "the balance of the Loan shall be paid to Owner [Placida] when the improvements have been completed and the last disbursement made under the draw schedule."  Affidavit of Michael B. Edwards at Exhibit A, p. 2. [DKT. 39-2, p. 2]

7. On or about March 27, 2007, **Placida** and its General Contractor, Fred Shute Real Estate and Development, Inc. ("General Contractor") executed a Construction Agreement for the construction

of the improvements on the Placida Property ("the Construction Contract"). See Affidavit of Michael B. Edwards at ¶ 4. [DKT. 39]

8. From July 27, 2007 to October 15, 2008, construction proceeded according to schedule with monthly draw requests submitted at the end of each month. A total of 12 draw requests were received, reviewed and paid by **Freedom Bank** with disbursements made from the Loan in the total amount of $1,597,504.20 as of October 30, 2008. See Affidavit of Michael B. Edwards at ¶ 5. [DKT. 39]

9. During construction, interest-only payments were made on the 28th day of each month by **Freedom Bank** drawing the same from the Interest Reserve. As such, the monthly interest payment due on October 28, 2008 was paid from the Interest Reserve on or about October 30, 2008. See Affidavit of Michael B. Edwards at ¶ 6. [DKT. 39]

10. After payment of the October 30, 2008 interest payment, the next monthly interest payment would not be due until November 28, 2008. See Affidavit of Michael B. Edwards at ¶ 7. [DKT. 39]

11. After payment of the October 30, 2008 interest payment, the sum of $1,682,495.68 remained in the Construction account. See Affidavit of Michael B. Edwards at ¶ 8. [DKT. 39]

12. After payment of the October 30, 208 interest payment, the sum of $144,465.76 remained in the interest reserve to

4

fund future interest payments, including interest payments during the period of time necessary to lease-up the Property. See Affidavit of Michael B. Edwards at Composite Exhibit B, p. 28. [DKT. 39-2, p. 28]

13. The **FDIC-R** was appointed as receiver for **Freedom Bank** on Friday, October 31, 2008. On that date, the Placida Project was approximately 3-4 weeks from completion of construction. See Affidavit of Michael B. Edwards at ¶ 9. [DKT. 39]

14. On or about November 6, 2008, the **FDIC-R** notified **Placida** that it was exercising its right of repudiation of the Loan pursuant to 12 U.S.C. § 1821(e), citing that the continued performance thereof by the **FDIC-R** would be "burdensome" and repudiation would "promote the orderly administration of the failed institution's affairs". See Affidavit of Michael B. Edwards at ¶ 10. [DKT. 39]

15. On Friday, October 31, 2008, the date of the appointment of **FDIC-R** as receiver for **Freedom Bank** and on November 6, 2008, the date of **FDIC-R's** repudiation of the Loan, the Loan was in good standing in all respects and was not in default. See Affidavit of Michael B. Edwards at ¶ 11. [DKT. 39]

16. On or about February 3, 2009, **Placida** submitted a timely claim to the **FDIC-R** for damages caused by the **FDIC-R's** repudiation of the Construction Loan Agreement. The **FDIC-R**

received **Placida's** claim on February 4, 2009.  See Affidavit of Michael B. Edwards at ¶ 15 and Exhibit C thereto. [DKT. 39 and 39-2, p. 29]

      17. During the administrative claims process, on or about September 1, 2009 and again on September 18, 2009, the **FDIC-R** notified **Placida** that it denied its claim.  See Affidavit of Michael B. Edwards at ¶ 18. [DKT. 39]

      18.  Because the **FDIC-R** repudiated the Loan and has denied **Placida's** claim, **Placida** has been damaged.  See Affidavit of Michael B. Edwards at ¶ 21. [DKT. 39]

      19.   Although **FDIC-R** initially denied **Placida**'s claim for repudiation damages in the administrative claims process, **<u>FDIC-R has since admitted liability for damages</u>** in its Response to Plaintiffs' Motion for Summary Judgment [DKT. 43, ¶ 9], which states:

> **9.  The FDIC as Receiver does not dispute it is liable for damages for the payment of "actual, direct, compensatory damages" under FIRREA, but it does dispute the amount of damages claimed by Placida.**

Furthermore, **FDIC-R's** own expert, Chad Durrance, MAI, has testified that the **FDIC-R** repudiation of the Construction Loan caused damages to **Placida.**  See Deposition of C. Durrance at Exhibit 5. [DKT. 63] Therefore, based on these admissions, Plaintiffs are entitled to

the award of a Partial Summary Judgment against the **FDIC-R** on the issue of liability.

20.  Although **FDIC-R** has admitted its liability for damages, there continues to be a factual dispute as to the amount of damages incurred by **Placida** as a result of the loan repudiation. **Placida** and the **FDIC-R** have each retained an appraisal expert to quantify **Placida**'s damages resulting from the **FDIC-R's** repudiation of the Construction Loan.  **Placida**'s expert, Richard Bass, MAI, a State Certified General Appraiser, calculates Placida's damages at **$1,632,000** [Deposition of Richard Bass, MAI at Exhibit A, DKT. 40] while the **FDIC-R's** expert, Chad Durrance, MAI, a State Certified General Appraiser, calculates Placida's damages at **$440,000** [Deposition of Chad Durrance, MAI at Exhibit 5, DKT. 63][1].

## **MEMORANDUM OF LAW**

Pursuant to Rule 56 and Local Rule 3.01, the foregoing undisputed facts show that Plaintiffs are entitled to Partial Summary Judgment as to **FDIC-R'**s liability for damages demanded in Count II of Placida's First Amended Complaint and as to Placida's

---

[1] Interestingly, although their calculations of **Placida**'s damages differ by nearly $1,200,000 creating a question of fact, the appraisal methodology employed both by Richard Bass, MAI and Chad Durrance, MAI was the same. See Deposition of C. Durrance at p. 171-172. [DKT. 63]  The significant difference between the 2 appraisals is caused by the choice of the comparable properties used by each appraiser in the appraisal development process. See Deposition of C. Durrance at p. 171-172. [DKT. 63]

entitlement to prejudgment interest from the November 6, 2008 date of repudiation.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Chelates, Corp. v. Citrate*, 477 U.S. 317 (1986). A party may also move for partial summary judgment, identifying each claim or defense — or the part of each claim or defense - on which summary judgment is sought. Rule 56(a).

Under the terms of the Federal Rules of Civil Procedure, a summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages, and such issue as to damages may be left for future determination. Where the question of liability stands admitted, the plaintiff may be entitled to a "partial summary judgment" on that question, leaving for determination at the trial only the scope of the relief to be granted against the defendant. *Hampton v. Dillard's Department Stores*, 247 F. 3d 1091 (10th Cir. 2001)(interpreting the former Rule 56(d) relating to the entry of partial summary judgment).

## **The FDIC's Repudiation Powers under §1821**

The Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") gives the receivers of failed banks and savings and loan institutions wide-ranging powers to consolidate and liquidate those institutions. Receivers have broad authority under FIRREA to repudiate any contract or lease:

> (A) to which such institution is a party;
>
> (B) the performance of which the ... receiver, in [its] discretion, determines to be burdensome; and
>
> (C) the disaffirmance or repudiation of which the ... receiver determines, in [its] discretion, will promote the orderly administration of the institution's affairs." 12 U.S.C. § 1821(e)(1).

If the Federal Deposit Insurance Corporation ("FDIC") repudiates a contract, it is liable to the non-breaching party for "actual direct compensatory damages" resulting from its repudiation. 12 U.S.C. § 1821(e)(3)(A).

The text of 12 U.S.C. § 1821(e) states in relevant part:

> **§ 1821. Insurance Funds.**
>
> **(e) Provisions relating to contracts entered into before appointment of conservator or receiver.**
>
> > **(1) Authority to repudiate contracts. In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—**
> >
> > > **(A) to which such institution is a party;**

9

**(B)** the performance of which the conservator or receiver, in the conservator's or receiver's discretion, determines to be burdensome; and

**(C)** the disaffirmance or repudiation of which the conservator or receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

**(2) Timing of repudiation.** The conservator or receiver appointed for any insured depository institution in accordance with subsection (c) shall determine whether or not to exercise the rights of repudiation under this subsection within a reasonable period following such appointment.

**(3) Claims for damages for repudiation.**

**(A) In general.** Except as otherwise provided in subparagraph (c) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be—

**(I)** limited to actual direct compensatory damages; and

**(ii)** determined as of—

**(I)** the date of the appointment of the conservator or receiver; or

**(II)** in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

**(B) No liability for other damages.** For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include—

**(I)** punitive or exemplary damages;

**(ii)** damages for lost profits or opportunity; or

**(iii)** damages for pain and suffering.

### **FDIC's CLAIMS PROCEDURE UNDER 12 U.S.C. § 1821(d)**

"FIRREA" also created a statutory procedure for the processing of claims against the FDIC. 12 U.S.C. §§ 1821(d)(3)-(13). That process requires all claims against a failed financial institution, including those caused by the FDIC's repudiation of contracts with the failed institution, to be submitted to the FDIC within 90 days of the FDIC's publication of notice of the receivership 12 U.S.C. § 1821(d)(3)(B) or mailing of a claims form to a known creditor. 12 U.S.C. §1821(d)(3)(c).

Upon receipt of a claim, the FDIC has 180 days to review the claim. *See* 12 U.S.C. § 1821(d)(5)(A)(I) ("the claims period" or "the review period"). The FDIC may find in favor of the claimant, or it may 'disallow' the claim, i.e., reject it. 12 U.S.C. § 1821(d)(5)(D).

If the FDIC disallows an individual's § 1821(d)(5)(A)(I) claim, or if the 180-day review period expires without a decision by the FDIC-whichever occurs earlier-a claimant may elect one of two courses of action.

> 1) As its first option, a claimant must request administrative review of the disallowed claim within 60 days of the FDIC's final determination. *See* 12 U.S.C. § 1821(d)(6)(A);
>
> 2) The claimant's second option is to proceed directly to federal district court. *See* 12 U.S.C. § 1821(d)(6)(A) "... the claimant may ... file suit on such claim ... in the district or territorial court of the United States for the district within which the depository

11

institution's principal place of business is located ...");

*Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1165 (7th Cir. 1995) (stating that "the dissatisfied claimant may avoid further dealing with the RTC[2]. He may return to square one, and, under 12 U.S.C. § 1821(d)(6)(A), file suit against the RTC in federal district court, not for review of the RTC's disallowance, but for relief on the underlying claim. Such a suit ignores the RTC's disallowance and allows de novo examination of the claim by the federal courts. 12 U.S.C. § 1821(d)(6)(A)").

In making this fresh and independent determination, therefore, the Court may consider any and all evidence relating to the claim, regardless of its presentation to the FDIC during the claims review process. *Id.*

A claimant choosing the second option must file suit within 60 days from the FDIC's denial of the claim, if a response is received, or within 60 days of the expiration of the 180 day claims period. *See* 12 U.S.C. § 1821(d)(6)(A) "Before the end of the 60-day period beginning on the earlier of-(I) the end of the period described in paragraph (5)(A)(I) with respect to any claim against a depository institution for which the [FDIC] is receiver; or (ii)

---

[2] The Resolution Trust Corporation ("RTC") was the statutory predecessor to the FDIC. *See, e.g.*, *Resolution Trust Corp. v. First American Bank*, 155 F.3d 1126, 1127 (9th Cir.1998) (stating that the RTC was the FDIC's predecessor). The RTC was abolished in 1995, and replaced by the FDIC. *See* 12 U.S.C. § 1441a(m)(1).

the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(I), the claimant may ... file suit on such claim ..."). *Id.*

In summary, a claimant must comply with the following procedural steps to prevail on a claim against the FDIC for contract repudiation:

1)  File a claim with the FDIC within 90 days from the FDIC's publication of the receivership and mailing of a claim form.  If the FDIC disallows the claim, a claimant can either:

    A)  request administrative review of the disallowed claim within 60 days of the FDIC's disallowance of the claim; or,

    B)  proceed directly to federal district court in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located and file an action within 60 days of the FDIC's disallowance of the claim.

Thus, the elements of a § 1821 Repudiation Claim against the FDIC are established when reading these two sub-sections together:

- **Existence of a contract with failed banking institution**

- **Repudiation of the same by the FDIC**

- **Repudiation occurs within a reasonable time**

- **Actual, direct, compensatory damages caused by repudiation**

- **Compliance with jurisdictional claims procedure**

In the instant case, **Placida** has met all of these elements.

- It is undisputed that **Placida** and the former **Freedom Bank** were parties to a Construction Loan Agreement, Note and Mortgage. See Affidavit of Michael B. Edwards at ¶ 2 and Exhibit A thereto. [DKT. 39 and 39-2]

- It is undisputed that the **FDIC-R** repudiated the loan. See Affidavit of Michael B. Edwards at ¶ 10 [DKT. 39]; Answer of **FDIC-R** [DKT. 23] at ¶ 28.

- It is undisputed that the repudiation occurred within a week of appointment of the **FDIC-R** as receiver, which **Placida** concedes, was within a reasonable time. See Affidavit of Michael B. Edwards at ¶ 10. [DKT. 39]

- It is undisputed that **Placida** suffered actual, direct, and compensatory damages, which have been proven with reasonable certainty by **Placida**. See Deposition Transcript of Richard Bass, MAI at Page 72 and attached Appraisal Report [DKT. 40] and Deposition of Chad Durrance, MAI [DKT. 63].

- It is undisputed that **Placida** complied with the jurisdictional claims procedure or exhaustion requirement set forth in §1821(d) requiring **Placida** to file a claim within 60 days of the mailing of the claims form by the **FDIC-R**. See Affidavit of Michael B. Edwards at ¶14-16. [DKT. 39]

**FDIC-R** has also admitted in its Answer [DKT. 23] that Plaintiffs' claim was timely received on February 4, 2009, within the 60 days set forth in §1821(d).

**Placida** has also complied with the jurisdictional requirement to file an action within 60 days from the denial of its claim by the **FDIC-R**. In the instant case, the **FDIC-R** denied Plaintiffs' claim on September 1, 2009 and again on September 18, 2009. Notwithstanding the repeated mailing of notices denying Plaintiffs' claim by the FDIC, Plaintiffs filed this action on October 30,

14

2009, the 60th day after the first denial notice dated September 1, 2009.  See Affidavit of Michael B. Edwards at ¶ 18-20.  [DKT. 39]

As such, since there is no dispute as to the material facts necessary to establish the substantive or procedural requirements for Plaintiffs' cause of action for repudiation damages pursuant to § 1821(e), and because the ***FDIC-R has admitted to liability for damages*** in this case, Plaintiffs are entitled to Partial Summary Judgment as to the **FDIC-R's** liability for damages as a matter of law.

### Entitlement to Prejudgment Interest

In addition to an award for Partial Summary Judgment as to the FDIC-R's liability for damages, **Placida** seeks pre-judgment interest on any diminution award measured from the date of repudiation through the date of judgment. <u>FDIC v. Hickey</u>, 757 F.Supp 2d 194 (E.D.N.Y. 2010); <u>Waterview Management Co. v. FDIC</u>, 257 F. Supp.2d 31 (D.D.C. 2003) (holding that Section 1821(e)(3) does not prohibit the award of prejudgment interest).

In making an award of pre-judgment interest for the FDIC's repudiation of a contract, the award should begin at the time when the repudiation or breach occurs.  <u>Hickey</u>, 757 F.Supp 2d at 198.  In the instant case, it is undisputed that the FDIC-R repudiated the Placida Construction Loan on November 6, 2008 and thus, an award of pre-judgment interest as of this date would be proper.

15

## **FDIC-R's AFFIRMATIVE DEFENSES**

With its Answer to Count II of the First Amended Complaint [DKT. 23], the **FDIC-R** alleges 3 affirmative defenses:

- A) That Plaintiffs' recovery is limited to the recovery of receivership certificates;

- B) That Plaintiffs' damages must be setoff to any amounts owed by Plaintiffs to the FDIC; and,

- C) Plaintiffs' have failed to mitigate damages.

Plaintiffs do not dispute the **FDIC-R's** first affirmative defense that any damages awarded against the **FDIC-R** in excess of amounts owed by Plaintiffs to the **FDIC-R** can be paid in the form of receiver's certificates, in advance of a final distribution of assets. *FDIC v. Hickey*, 2010 WL 5151327 (E.D.N.Y., Dec. 13, 2010); *Resolution Trust Corp. as Receiver for Occidental Nebraska Savings, FSB v. Titan Financial Corp.*, 36 F.3d 891 (9th Cir. 1994).

Plaintiffs also do not dispute the **FDIC-R's** setoff defense. It is agreed that any damages awarded by this Court must be setoff to amounts owed by Plaintiffs to the **FDIC-R** (or its successors), measured as of the date of the receivership, pursuant to 12 U.S.C. §1821(e)(3)(A)(ii). *See, e.g., Federal Deposit Insurance Corp. v. Parkway Executive Office Center,* 1998 WL 18204 (E.D. Pa. 1998) (permitting claims of offset and recoupment in action for damages based upon FDIC's repudiation of contract); *Federal Deposit*

16

*Insurance Corp. v. Grant,* 157 F. 3d 697 (9th Cir. 1998)(permitting setoff of repudiation damages against amounts owed on promissory notes); *Grant County Savings and Loan v. Resolution Trust Corp.,* 770 F. Supp. 1374 (E.D. Ark. 1991)(permitting setoff of claims or demands between the RTC and savings association related to loan participations); *Interfirst Bank Abilene, N.A. v. Federal Deposit Insurance Corp.,* 777 F. 2d 1092 (5th Cir. 1985)(permitting setoff of Interfirst's account against debts of Interfirst); *Villafane Neris v. Citibank, N.A.,* 845 F. Supp 930 (D. P.R. 1994)(permits FDIC to setoff CD to loan balance).

However, **Placida** denies the **FDIC-R's** Third Affirmative Defense that Plaintiffs failed to mitigate their damages, since the measure of damages for the **FDIC-R's** contract repudiation is measured as of the date of the receivership, pursuant to 12 U.S.C. §1821(e)(3)(A)(ii). Pursuant to 12 U.S.C. §1821(d)(14), the rights of parties to the assets of a failed banking institution become fixed at the time the **FDIC** is appointed as receiver and the right to setoff is governed by the state of things at that time, not by conditions thereafter arising. *Grant County Savings*, 770 F. Supp. at 1376. Therefore, the actions of **Placida** after the date of repudiation of the loan are irrelevant as to the entitlement and amount of damages to which **Placida** is entitled as a result of the **FDIC-R'**s repudiation of **Placida'**s Construction Loan.

17

As such, **FDIC-R** has an absolute duty to pay damages for repudiation of Contract pursuant to 12 U.S.C. §1821(e)(3)(A)(ii), measured as of the date of the appointment of receiver, regardless of Plaintiffs' efforts to mitigate damages pursuant to 12 U.S.C. §1821(d)(14).

Furthermore, even though Plaintiffs had no duty to mitigate damages, they attempted to do so by seeking alternative financing to complete the improvements. However, because of the state of the financial markets in late 2008 and early 2009 (a situation arguably caused by the FDIC itself), alternative financing was not available and Plaintiffs' damages could not be mitigated. See Affidavit of Michael B. Edwards at ¶ 13. [DKT. 39]

Nonetheless, although Placida denies the **FDIC-R's** Third Affirmative Defense, no issue of fact is thereby created as to the issue of **FDIC-R**'s liability for damages.

## **CONCLUSION**

**FDIC-R** has admitted to liability for damages for its repudiation of the Placida Construction Loan and without any material facts in dispute, **Placida** is entitled to the entry Partial Summary Judgment. Additionally, **Placida** is entitled to Partial Summary Judgment as to **Placida's** entitlement to prejudgment interest from the November 6, 2008 date of repudiation. Thus, the only issue remaining for trial is the amount of "actual, direct and

18

compensatory damages" caused by the **FDIC-R's** repudiation of the **Placida** Construction Loan.

WHEREFORE, **Placida** demands entry of Partial Summary Judgment against Defendant, **FDIC-R** declaring FDIC-R's liability "actual, direct and compensatory damages" resulting from its repudiation of **Placida's** Construction Loan, declaring **Placida's** entitlement to pre-judgment interest as of the November 6, 2008 date of repudiation, for an award of prevailing party attorney's fees pursuant to the Loan Documents, costs of this action, ordering the same to be setoff against the Note, Mortgage, Construction Loan Agreement and Guaranties, and for such other relief as the Court deems proper.

## Certificate of Service

I CERTIFY that a copy of the foregoing has been provided via CM/ECF to Michael H. Rosen, Attorney for Defendant, 201 E. Kennedy Blvd, Suite 600, Tampa, Florida 33602 on September 20, 2011.

**THE EDWARDS LAW FIRM, PL**
**1901 Morrill Street**
**Sarasota, Florida 34236**
**Telephone: 941-363-0110**
**Facsimile: 941-952-9111**
**sedwards@edwards-lawfirm.com**
**Counsel for Plaintiffs**


**By: /s/ Sheryl A. Edwards**
      **Sheryl A. Edwards**
      **Florida Bar No.: 0057495**