**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PLACIDA PROFESSIONAL CENTER,**
**LLC, MICHAEL B. EDWARDS and**
**SHERYL A. EDWARDS,**

     **Plaintiffs,**

**v.**                                                                  **Case No.  8:09-cv-2221-T-30MAP**

**FEDERAL DEPOSIT INSURANCE**
**CORPORATION,**

     **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon: (1) Defendant's Motion to Dismiss (Dkt. 42) and Plaintiffs' Response (Dkt. 45); (2) Plaintiffs' Amended Motion for Partial Summary Judgment (Dkt. 64) and Defendant's Response (Dkt. 65), and; (3) Defendant's Amended Motion for Partial Summary Judgment, or in the Alternative, Motion in Limine to Exclude Appraisal Testimony of Richard Bass, MAI (Dkt. 62) and Plaintiffs' Response (Dkt. 68).

This Court, having considered the motions and responses, and being otherwise advised, concludes: (1) Defendant's Motion to Dismiss against the individual Plaintiffs Michael and Sheryl Edwards (Dkt. 42) should be granted; (2) Plaintiffs' Motion for Partial Summary Judgment (Dkt. 64) should be granted in part and denied in part, and; (3) Defendant's Motion for Partial Summary Judgment should be denied in part and granted in part.

**Background**

This action arises out of the repudiation of a construction loan agreement by the Federal Deposit Insurance Corporation ("FDIC-R") acting as Receiver for Freedom Bank. In February 28, 2007, Plaintiff Placida Professional Center, LLC ("Placida") and Freedom Bank executed a construction loan agreement, a promissory note, and a mortgage in which Freedom Bank agreed to loan a total of $3,280,000 to Placida for the construction of a professional office center in Charlotte County, Florida ("the Placida project"). As a condition of the loan, Freedom Bank required Placida's members, Michael and Sheryl Edwards, to execute personal guaranties to further secure the loan.

Under the agreement, $240,000 of the principal amount was to be reserved for interest payments on the loan during construction and a reasonable period of time to obtain tenants upon completion. The agreement provided that disbursements from the loan would be made upon submission of a draw request to the bank and after inspection by the bank's inspector. The agreement further provided that upon substantial completion, all remaining funds from the Loan would be disbursed to Placida.

Construction on the Placida project proceeded according to schedule from July 27, 2007 to October 15, 2008, with monthly draw requests submitted at the end of each month. A total of 12 draw requests were received, reviewed, and paid by Freedom Bank with disbursements made from the loan in the total amount of $1,597,504.20 as of October 30, 2008. During construction, interest only payments were automatically paid on the 28th day of each month from the interest reserve held by Freedom Bank. The interest payment due

on October 28, 2008, was paid on October 30, 2008. After that October 2008 interest payment, $1,682,495.68 remained in the loan account.

On October 31, 2008, the FDIC-R was appointed as receiver for Freedom Bank. The FDIC-R held a meeting with Placida on November 6, 2008, to discuss the loan for the Placida project. At this meeting, the FDIC-R notified Placida that it was exercising its right of repudiation of the loan under 12 U.S.C. § 1821(e) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). The FDIC-R stated that it was not going to continue to fund further draws from the loan, citing that the continued performance thereof by the FDIC-R would be "burdensome" and that repudiation would "promote the orderly administration" of Freedom Bank's affairs.

In February 2009, Placida submitted a claim to the FDIC-R for rescission of the note and mortgage and for damages caused by the FDIC-R's repudiation of the construction loan agreement. After extending the claims period under 12 U.S.C. § 1821(d)(5)(a)(ii), the FDIC-R sent Placida a notice of denial of its claim in September 2009. The notice indicated that "the claim was deemed without merit since the loan ha[d] been in default since October 2008 and therefore, not proved to the satisfaction of the Receiver."

Upon the denial of their claim, Plaintiffs brought this action in federal district court seeking: (1) declaratory judgment; (2) damages, and; (3) setoff of any damages award against other sums allegedly owed by Plaintiffs to the former Freedom Bank. This Court has since dismissed the counts for declaratory judgment and setoff; accordingly, only the Plaintiffs' claim for damages remains before this Court.

## Discussion

### I.    FDIC-R's Motion to Dismiss for Lack of Subject Matter Jurisdiction

In its Motion to Dismiss (Dkt. 42), Defendant FDIC-R asks this Court to dismiss, for lack of subject-matter jurisdiction, all of the remaining claims of individual Plaintiffs Michael and Sheryl Edwards.

### A.    Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a party may attack subject-matter jurisdiction on either facial or factual grounds. *Sinaltrainal v. Coca-Cola Co.*, 578, F.3d 1252, 1260 (11th Cir. 2009). A facial challenge contests the sufficiency of the plaintiff's pleading of subject-matter jurisdiction. *Id.* In deciding a facial challenge, the court takes the alleged facts in the complaint as true, and construes those facts in a light most favorable to the plaintiff. *Id.* In contrast, a factual attack challenges the existence of subject-matter jurisdiction in fact. *Id.* Here, the court decides the merits of the jurisdictional claim, deciding the facts as necessary. *Id.; Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990). The court must dismiss all claims for which it lacks subject-matter jurisdiction, whether on facial or factual grounds.

### B.    Defendant FDIC-R's Motion to Dismiss

Defendant FDIC-R makes a facial and factual challenge to the Court's subject-matter jurisdiction over the claims of the individual Plaintiffs Michael and Sheryl Edwards. Specifically, the FDIC-R argues that the Edwards have both failed to allege adequate prerequisites to jurisdiction, and have failed to meet those prerequisites in fact. This Court

agrees.  Accordingly, the FDIC-R's Motion to Dismiss against the individual Defendants Michael and Sheryl Edwards is hereby granted.

Under FIRREA, when the FDIC is appointed as a receiver of a failed bank, it succeeds to "all rights, titles, powers, and privileges" of the failed institution.  12 U.S.C. § 1821(d)(2)(i).  Upon being appointed receiver, the FDIC must provide notice by publication to creditors and potential claimants informing them that they have ninety days after the date of notice to present their claims.  12 U.S.C. § 1821(d)(3)(B)(i).  Once a creditor submits a claim, the FDIC-R then has 180 days to rule on that claim.  12 U.S.C. § 1821(d)(5)(A).  If the FDIC-R denies the claim, the claimant may then appeal this ruling or seek relief in federal district court.  12 U.S.C. § 1821(d)(6)(A).

Importantly, the submission of an administrative claim to the FDIC-R is a *mandatory prerequisite* to later pursuing that claim in federal court.  The failure to timely bring an administrative claim creates a jurisdictional bar, depriving federal courts of subject-matter jurisdiction to hear the underlying claim.  *McMillian v. FDIC*, 81 F.3d 1041, 1045 (11th Cir. 1996); *First Fed. v. Lake Forest Park*, 198 F.3d 1259, 1263 (11th Cir. 1999).

Here, it is undisputed that the individual Defendants Michael and Sheryl Edwards both failed to timely submit any administrative claims to the FDIC.  (Decl. Of Jeffry M. Quick, FDIC Claims Agent).  Indeed, the Edwards admit that they failed to timely file their individual claims.  (Plaintiffs' Response to Defendant's Motion to Dismiss, 2).

As a result of the Edwards' failure to timely file administrative claims with the FDIC-R, this Court lacks subject-matter jurisdiction to hear those claims.  Consequently, the FDIC-

R's Motion to dismiss all remaining claims of the individual Plaintiffs Michael and Sheryl

Edwards should be granted.[1]

## II.      Motions for Summary Judgment

### A.      Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits,

show there is no genuine issue as to any material fact and that the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  The existence of some factual disputes between the litigants will not defeat an

otherwise properly supported summary judgment motion; "the requirement is that there be

no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

(1986) (emphasis in original).  The substantive law applicable to the claimed causes of action

will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine

the evidence in the light most favorable to the non-movant and draw all justifiable inferences

in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the

absence of a genuine issue of material fact, whether or not accompanied by affidavits, the

nonmoving party must go beyond the pleadings through the use of affidavits, depositions,

answers to interrogatories and admissions on file, and designate specific facts showing that

---

[1]All parties agree that Placida timely filed its claims with the FDIC-R.  Accordingly, it remains a
party to this action.

there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

### B.      Plaintiff Placida's Amended Motion for Partial Summary Judgment

Plaintiff Placida moves for summary judgment on the issues of: (1) FDIC-R's liability for damages, and; (2) Placida's entitlement to an award of pre-judgment interest.

#### i.      Liability

Under 12 U.S.C. § 1821(e)(3)(A), the FDIC as receiver is liable for the "actual direct compensatory damages" caused by its "disaffirmance or repudiation" of any contract pursuant to its powers as a receiver.

Here, Placida argues that the FDIC-R is liable for damages due to its repudiation of the Placida construction loan. The Defendant FDIC-R has conceded that it is so liable.

Accordingly, this Court grants Plaintiff Placida's Amended Motion for Partial Summary Judgment on the issue of liability.

### ii.      Entitlement to Pre-Judgment Interest

Placida argues that it is entitled to an award of pre-judgment interest, given that liability is conceded. This Court disagrees.

Here, the appropriate amount of damages is hotly contested; therefore, the claimed damages are currently unliquidated.[2]   As pre-judgment interest is only available for liquidated or readily ascertainable damages, Placida is not entitled to pre-judgment interest as a matter of law at this time.  *See, e.g., Cioffe v. Morris*, 676 F.2d 539, 543 (11th Cir. 1982); *Nat'l R.R. Passenger Corp. V. Rountree Transp. & Rigging, Inc.,* 286 F.3d 1233, 1259 (11th Cir. 2002). Accordingly, Placida's Motion for Summary Judgment on the issue of pre-judgment interest is denied.[3]

### C.      Defendant FDIC-R's Amended Motion for Partial Summary Judgment

Defendant FDIC-R's Amended Motion for Partial Summary Judgment, or in the alternative, Motion in Limine to Exclude Appraisal Testimony of Richard Bass, MAI, (Dkt. 62) asks this Court to exclude various parts of Mr. Bass's proposed testimony on the issue of damages.  For the reasons stated below, this Court denies the Motion in part, and grants it in part.

---

[2]Plaintiff claims damages in the amount of $1,632,000.  Defendant contends that $440,000 is the proper measure of damages.

[3]This Court may consider the appropriateness of awarding pre-judgment interest  to Placida once damages have been ascertained with certainty.

###### i.     Mr. Bass's Proposed Testimony as to Damages

Plaintiff Placida's expert witness, Mr. Bass, proposes to testify as to the "actual direct compensatory" damages suffered by Placida as a result of the FDIC-R's repudiation of the Placida construction loan.  According to both Mr. Bass and the Defendant's expert witness, Chad Durrance, the "diminution of value" of the Placida property caused by the repudiation is the proper measure of the "actual direct compensatory" damages suffered by Placida.

In deriving his "diminution of value" figure, Mr. Bass utilizes a three-step approach. First, he estimates the "as-if completed" value of the Placida property by obtaining the sales figures of four allegedly similar completed properties.[4]  Finding a sales range of $174.51-$256.25 per square foot, he estimates an "as-if completed" value for the Placida property of $200 per square foot, or $3.4 Million.

Second, by ascertaining the hard and soft costs required to complete the project, Bass determines that it was 70% complete as of the date that the FDIC-R was appointed as receiver: Oct. 31, 2008.  As 70% of $3.4 Million comes out to approximately $2.4 Million, Bass finds that the "as-is" value of the property on Oct. 31, 2008 (with financing in place) was $2.4 Million.

Third, in order to ascertain the value of the property after the FDIC-R's repudiation of the construction loan (with the consequent loss of financing), Bass argues that it is

---

[4]Mr. Bass states that, *inter alia,* all of these properties were built between 2000 and 2005, had similar zoning, similar access by roadway, and sold within seven months of the date of the Placida loan repudiation.

necessary to apply two distinct types of market discounts:  (1) a "Class I" general (or property related) discount, and; (2) a "Class II" transactional (or party related) discount.

Mr. Bass argues that a "Class I" discount is required to account for the incomplete construction of the property.  Bass ultimately concludes that the appropriate discount for the property's "Class I" condition is 40%.

Bass further states that an additional "Class II" discount is required to account for the abrupt termination of financing.  According to Bass, the loss of financing caused by the loan repudiation put the property in a distressed condition, creating an atypical motivation to sell the property quickly at a significant discount.   Bass argues that this "Class II" condition substantially reduced the value of the property.  Based on a "market survey" of other stakeholders active in the market, Bass determined that the appropriate range of this "Class II" discount is 20-60%.  Ultimately, he concludes that "28%" is the correct discount rate to be applied in this case.

Having calculated a 40% "Class I discount" and a 28% "Class II" discount, Bass sums these together to yield a total discount rate of 68%.  Applied to Bass's $2.4 Million estimate of the value of the property with financing still in place, this results in a total diminution of value of $1,632,000.

### ii.    FDIC-R's Motion to Exclude Bass's Proposed Testimony to Damages in Excess of the Costs to Complete the Placida Project

Both parties agree that under FIRREA, recoverable damages are limited to only those "actual direct compensatory damages" caused by the FDIC-R's repudiation.

Here, the FDIC argues that this language implies that Placida's damages should be capped at the costs to complete construction; specifically, at $875,000 (even though 1,682,495.68 remained in the loan account at the time of repudiation). Thus, the FDIC-R argues that Mr. Bass should not be allowed to testify that Placida is entitled to damages in excess of this amount. This Court disagrees.

In determining the proper amount of damages, both parties have adopted the diminution in value approach sanctioned in *FDIC v. Parkway Exec. Office Ctr.*, 1998 WL 18204, *5 (E.D. Pa. 1998). As discussed earlier, this diminution in value methodology calculates damages as the difference between the value of the property with funding in place and without. Given this approach, there is no principled reason why damages must be less than the costs to complete construction as of the date of repudiation. Notably, the FDIC-R has cited no cases in support of its position. Accordingly, the Court denies the FDIC-R's Amended Motion for Partial Summary Judgment on this issue.

### iii.    FDIC-R's Motion to Exclude Bass's Proposed Testimony as to an Additional 28% "Class II" Discount

As discussed previously, Bass contends that the Placida property was subject to two discounts: (1) a "Class I" property related discount of 40% and; (2) a "Class II" transaction related discount of 28%. The FDIC-R argues that Bass's proposed testimony of this second, "Class II," discount should be excluded. This Court agrees.

In his affidavit, Mr. Bass explains that the "Class II" transactional discount compensates for distress created by the abrupt termination of financing. According to Mr.

Bass, such distress creates an atypical motivation to sell; specifically, a desire to quickly dispose of the property. As a property subject to this "Class II" condition is typically sold at a significant discount, it is allegedly worth substantially less as a result of its distressed condition. Mr. Bass contends that 28% is the appropriate "Class II" discount in this case. The FDIC-R moves to exclude this testimony, arguing that it fails to meet the standards of admissibility under *Daubert*[5] and its progeny and Fed. R. Evid. 702.

In *Daubert*, the United States Supreme Court made clear that federal district courts must perform a critical "gatekeeping" function when deciding whether to admit expert scientific or technical evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Accordingly, district courts must perform an "'exacting analysis' of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Under Fed. R. Evid. 702., qualified expert opinion testimony may be admitted if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

Here, while Mr. Bass appears to qualify as an expert, his proposed testimony as to the 28% "Class II" discount fails to meet the standards of admissibility of expert testimony

---

[5]Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

promulgated by *Daubert* and Fed. R. Evid. 702.  The underlying problem of Mr. Bass's

proposed testimony is that the calculated 28% "Class II" discount is not based upon any type

of reliable methodology.  On the contrary, it appears to be the product of mere guesswork.

 In his deposition, Mr. Bass discusses how he came up with the 28% figure:

Q. And then in addition to that, you concluded to a 40 percent diminution in value based on those three comparable sales?

A. Yes.

Q. And then on top of that, you determined that another 28 percent was appropriate, correct?

A. Yes.

Q.  Can you explain to me the basis for that opinion?

A. Yep.  I think I wrote it out here for you.

As we looked at those particular three that we just discussed, we were able to identify a document that discount was applied.  What we were not able to verify and document specifically for each of those is that the mortgage sold for.

So bank A sells the mortgage on–let's just pick a property–for 20 cents on the dollar.  We can't verify that.  That is not public domain information. We have a range of what that discount is.

That is Mission Capital, for example.  It says if those discounts we form off those mortgages, you know, we are getting from 20 to 60 percent discount and sometimes even higher.  So while we've got confirmation of the subsequent sale of the property and what that discount was, we don't have the original discount from the bank to the wholesaler who is buying that mortgage. And that guy is turning around and selling it.  This is the sale we have.  We don't have this discount.  But we know that range is 20 to 60 percent or higher. We have confirmed that information.  So what do I apply out of that range? I can apply 20 percent or I can apply 60 percent.  Well, if I apply 60 percent, plus the 40 percent discount, that is 100 percent.  That is not logical.  You

can't do that.  So it has got be something else.  Then you sit back and go, all right, within this project what is reasonable, what is logical in order to apply an appropriate discount.  I got support for 20/60.  Where am I to pick in that number?  You want to pick in that number with what is consistent with what the ultimate analysis we've done here.  That works out to about 28 percent. [Bass Depo. Pgs. 77-79].

Mr. Bass's opinion of the appropriateness of taking an additional 28% discount has conspicuous limitations.  In fact, it fails all three prongs under Fed. R. Evid. 702.  First, Mr. Bass fails to disclose the specific facts, and/or data which were used to make his assessment. Although Mr. Bass apparently derived the 20% to 60% discount range from informal market surveys, we are not told who specifically he talked to, what their specific opinions were, how they came to these conclusions, and/or how Mr. Bass decided on the 20% to 60% range after presumably talking to multiple experts.  Moreover, we are not given any facts, and/or data that might support a specific discount of 28% in this particular case.  Accordingly, Mr. Bass's proposed testimony fails the first prong of admissibility under Fed. R. Evid. 702, that proposed expert testimony be based upon specific facts or data.

Second, Mr. Bass fails to explain the precise methodology utilized to derive his 28% figure, after having settled on a discount range of 20% to 60%.  Mr. Bass testified in his deposition that he picked the 28% figure because it was "consistent" with the "ultimate analysis."  As he provides absolutely no indication how this was done, however, he essentially asks this Court to take his word for it.  This fails to meet the burden of admissibility under Fed. R. Evid. 702 as Mr. Bass has failed to show that his proposed testimony as to the 28% discount is based upon *any* principles, and/or methods, let alone

reliable ones.  Consequently, Mr. Bass's proposed testimony additionally fails the second prong of Fed. R. Evid. 702.

Third, as Mr. Bass has failed to establish that his proposed testimony is based upon reliable principles, and/or methods, it follows that he cannot establish that he reliably applied such principles to the facts of this case.  Thus, his proposed testimony also fails the third and final prong of Fed. R. Evid. 702.

For the above reasons, this Court concludes that Mr. Bass's proposed testimony of the appropriateness of an additional 28% "Class II" discount should be excluded as the basis of this opinion is currently insufficiently supported.

It is therefore **ORDERED AND ADJUDGED** that:

1.      Defendant FDIC-R's Motion to Dismiss (Dkt. 42) against individual Defendants Michael and Sheryl Edwards is hereby granted.

2.      The Clerk is directed to terminate party Defendants Michael Edwards and Sheryl Edwards from this case.

3.      Plaintiff Placida's Amended Motion for Partial Summary Judgment (Dkt. 64) with respect to the issue of liability is hereby granted.

4.      Plaintiff Placida's Amended Motion for Partial Summary Judgment (Dkt. 64) with respect to the issue of pre-judgment interest is hereby denied.

5.      Defendant FDIC-R's Amended Motion for Partial Summary Judgment, or in the Alternative, Motion in Limine to Exclude Appraisal Testimony of Richard Bass, MAI

(Dkt.62), with respect to his proposed testimony of damages in excess of the costs to complete construction is hereby denied.

6. Defendant FDIC-R's Amended Motion for Partial Summary Judgment, or in the Alternative, Motion in Limine to Exclude Appraisal Testimony of Richard Bass, MAI (Dkt. 62), with respect to his proposed testimony as to an additional 28% "Class II" discount is hereby granted.

**DONE** and **ORDERED** in Tampa, Florida on October 18, 2011.

_____

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2009\09-cv-2221.mtd.msj.wpd