UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PLACIDA PROFESSIONAL CENTER, LLC, a Florida
Limited Liability Company,

                       Plaintiff,

vs.                                CASE NO. 8:2009 CV 02221-T30 MAP

FEDERAL DEPOSIT INSURANCE CORPORATION, as
Receiver for Freedom Bank,

                       Defendant.

_____/

## PLAINTIFF'S AMENDED TRIAL BRIEF

    Plaintiff, **PLACIDA PROFESSIONAL CENTER, LLC, a Florida Limited Liability Company ("Placida"),** hereby files its Amended Trial Brief[1] with incorporated Findings of Fact and Conclusions of Law and states as follows:

## Introduction

    This action arises out of the repudiation of a construction loan agreement by the Federal Deposit Insurance Corporation ("FDIC-R") acting as Receiver for Freedom Bank and the denial of a Proof of Claim for repudiation damages filed by Plaintiff, Placida Professional Center, LLC ("Placida") against FDIC-R .  On October 18, 2011, this court granted Placida's Motion for Partial Summary Judgment on the issue of liability, and thus, the issues for trial center around the amount of Placida's damages.

---

[1]    The Amendments to the Trial Brief are solely to comply with the Court's Orders on FDIC-R's Motion in Limine [Dkt. 74] and Placida's Motion for Clarification of the Same [Dkt. 107].

On February 28, 2007, Placida and Freedom Bank entered into a construction loan agreement, a promissory note, and a mortgage in which Freedom Bank agreed to loan a total of $3,280,000.00 to Placida for the construction of a professional office center in Charlotte County, Florida ("the Placida project"). Under the agreement, $240,000.00 of the principal amount was to be reserved for interest payments on the loan during construction and a reasonable period of time to obtain tenants upon completion. The agreement provided that disbursements from the loan would be made upon submission of a draw request to the bank and after inspection by the bank's inspector. The agreement further provided that upon substantial completion, all remaining funds from the Loan would be disbursed to Placida.   Paragraph 6.9 of the loan agreement and separate provisions in both the note and mortgage provide for the award of a prevailing party attorney's fee in any litigation arising out of the loan documents.

Construction on the Placida project proceeded according to schedule from July 27, 2007 to October 15, 2008, with monthly draw requests submitted at the end of each month.  A total of 12 draw requests were received, reviewed, and paid by Freedom Bank with disbursements made from the loan in the total amount of $1,597,504.20 as of October 30, 2008. During construction, interest only payments were automatically paid on the 28th day of each month from the interest reserve held by Freedom Bank. The interest payment due on October 28, 2008, was paid on October 30, 2008. After that October 2008 interest payment, $1,682,495.68 remained in the loan account and, as of the end of October, the loan was in good standing in all respects.

On October 31, 2008, the FDIC-R was appointed as receiver for Freedom Bank. Construction Draw #13 was submitted by Placida on November 4, 2008 seeking $45,948.50 for

payment of the Contractor and several Subcontractors for work performed in October 2008.   The

FDIC-R held a meeting with Placida on November 6, 2008, to discuss the loan for the Placida

project. At this meeting, the FDIC-R notified Placida that it was exercising its right of repudiation

of the loan under 12 U.S.C. § 1821(e) of the Financial Institutions Reform, Recovery, and

Enforcement Act of 1989 (FIRREA). The FDIC-R stated that it was not going to continue to fund

further draws from the construction loan and the interest reserve, citing that the continued

performance thereof by the FDIC-R would be "burdensome" and that repudiation would "promote

the orderly administration" of Freedom Bank's affairs.  As such, Construction Draw #13 was never

paid and liens were filed against the Placida property by the contractors as a result.

   In late 2008, the financial markets in the United States and throughout the world were in

severe turmoil.    The subject loan repudiation coincided with failures of massive financial

institutions in the United States combined with historic declines in the U.S. stock market.  The U.S.

Treasury was forced to lend funds to banks and the federal government acquired significant equity

positions major corporations to keep them in business and to prevent a large scale collapse of the

worldwide economy.    Consequently, available financing for projects such as the subject was

impossible to obtain.

   In February 2009, Placida submitted a claim to the FDIC-R for rescission of the note and

mortgage and for damages caused by the FDIC-R's repudiation of the construction loan agreement.

Attached to Placida's Proof of Claim was documentation provided by Freedom Bank to evidence

that the payment due on October 28, 2008 was made.  Nonetheless, the FDIC-R sent Placida notice

of the denial of its claim in September 2009. The notice indicated that "the claim was deemed

without merit since the loan ha[d] been in default since October 2008 and therefore, not proved to the satisfaction of the Receiver."

Although the FDIC-R's notice denying Placida's claim indicated that the claim was denied because the loan was in default since October 2008, the spreadsheet attached to Placida's Proof of Claim indicated that the October 28, 2008 interest payment was made on October 30, 2008 - evidence indicating that the Placida loan was in good standing in all respects and not in default. Therefore, because the premise cited by FDIC-R to reject Placida's claim was faulty, the FDIC-R's rejection of the Placida Proof of Claim was unreasonable.

Given the lack of replacement financing for partially completed commercial construction in Southwest Florida in late 2008 and throughout 2009, the most financially feasible option available to Placida as of the date of the appointment of the FDIC as receiver was a quick sale of the property at an appropriate discount necessary to entice buyers in the marketplace.  While Placida marketed the property for sale in its as-is condition,  Placida was precluded from selling the project because the loan repudiation and resulting dimunition in value caused the property to be worth less than the $1,597,504.20 balance drawn from the loan for construction draw and interest payments to date. Although Placida received calls from a few potential purchasers, no purchaser was willing to purchase the property in its as-is incomplete condition for the $1,597,504.20 that was drawn on the Placida loan.

After FDIC-R denied Placida's claim, Placida filed this action against FDIC-R seeking a de novo review of its claim for repudiation damages.

On February 9, 2010 (after the commencement of this action), FDIC-R transferred the Placida loan as part of a $799,171,415.14 pool of loans to Multibank 2009-1 CML ADC Venture, LLC and then sold a 40% interest in Multibank to RL CML Venture, LLC ("Rialto") for $72,000,000 through a competitive sealed bid process where bids were submitted by at least 11 different bidders.   The bid submitted by Rialto was the highest bid for a 40% interest in the loans.  FDIC-R maintained a 60% ownership interest in the assets transferred to Multibank, including the Placida loan.

In the transfer of the Placida Loan from FDIC-R to Multibank and the sale of a 40% interest in the same to Rialto, the Placida Loan was valued at $396,225.55, or a 76%[2] discount from its stated outstanding principal balance of $1,605,022.32[3].

## Issues Remaining for Trial

Although Placida has been awarded judgment on the issue of FDIC-R's liability for Placida's repudiation damages, the amount of Placida's damages remains in dispute. The parties also disagree upon Placida's entitlement to pre-judgment interest on its damages award, Placida's entitlement to attorney's fees and costs as prevailing party in this action, Placida's right to set-off the damages awarded to it in this action against the outstanding balance of the loan and whether or not this Court's judgment in the action is binding against FDIC-R's successor(s), Multibank CML ADC 2009-1, LLC ("Multibank"), who acquired the FDIC-R's interest in the Placida loan after the

---

[2]    Compare the 76% discount from the principal balance of the loan applied by the purchaser of the Placida loan to the 40% dimunition in value resulting from the loan repudiation calculated by Appraiser Bass.

[3]    The $7,518.12 difference between the outstanding principal amount of the loan on October 31, 2008 of $1,597,504.20 and the outstanding principal balance of $1,605,022.32 stated on the attachments to the loan sale agreement to Multibank has never been accounted for by FDIC-R.

commencement of this action.

**Damages** - The parties agree that Placida is entitled to an award of its "actual, direct, compensatory damages" suffered as a result of the FDIC-R's repudiation of the Placida construction loan, however, the parties disagree on what amount of damages Placida is entitled to.   The parties have each retained an expert appraisal witness to provide testimony in this action.   These appraisers have each provided an opinion as to the amount of damages *suffered by the Property*, but Placida contends that its damages are not limited to damages for diminution in value *to the property*.

These appraisers agree that *Placida had equity in the Property as of the date of the appointment of FDIC-R as receiver[4]* (meaning, that the Placida property was worth more than the amount drawn on the construction loan).  And, because FDIC-R repudiated not only the construction payments, but also repudiated the scheduled interest payments from the interest reserve, it forced the loan into default and as a result, the property is subject to a pending action for foreclosure. Without a sufficient damages award from this Court and an order entitling Placida to set-off the damages awarded against the principal balance of the loan measured as of the date of the appointment of the receiver, the property will be a complete loss to Placida.

Thus, in order to make Placida whole, a measure of damages required by the 11th Circuit Court in *McMillian v. FDIC*, 81 F. 3d 1041 (11th Cir. 1996), Placida is entitled to an award of

---

[4]  Placida's expert, Richard W. Bass, MAI, AICP, EAC has rendered the opinion that the Property was worth $2,400,000 in its as-is condition with financing in place as of October 31, 2008; FDIC-R's expert, Chad Durrance, MAI has rendered the opinion that the Property was worth $1,760,000 in its as-is condition with financing in place as of that date.  On October 31, 2008, the amount due on the loan was $1,597,504.20.  As such, under Bass' opinion of value, Placida had $802,495.80 in equity in the property; under Durrance's calculation, Placida had $160,000 in equity on October 31, 2008.

damages that restores it to an equity position in the Property, a position it enjoyed as of the date of the appointment of the receiver.   Placida contends that the damages that would "make it whole" is an award of damages sufficient to satisfy the Placida loan, ($1,597,504.20 if fixed as of the date of the appointment of the receiver, pursuant to _American National Bank v. FDIC_, 710 F.2d 1528 (11th Cir. 1983 ) , argued _supra_)  which would  restore Placida to the equity position it enjoyed on the October 31, 2008 date of the appointment of the receiver.

Alternatively, Placida is entitled to dimunition in value damages in the amount of the $960,000.00 as set forth by the expert opinion of Richard W. Bass, MAI, AICP, EAC through the methodology set forth in _FDIC v. Parkway Executive Office Center_, 1998 WL 18204 (E.D. Pa. 1998).

Or, an alternative calculation of dimunition in value damages can be determined as the difference between the "As-is"  value of the Property with financing in place and the value for the asset established in the transfer to Multibank.

| | |
|---|---|
| As-Is value with financing in place | $2,400,000.00 |
| (As established by Bass Appraisal Opinion) | |
| Value of Placida Loan by Multibank at time of sale to establish | |
| market value of Project as of date of appointment of receiver | ($  396,225.55) |
| **Placida's Loss of Market Value Damages** | **$ 2,003,774.45** |

Finally, as a third alternative measure of damages, Placida is entitled to reliance damages intended to make contracting party whole after a breach that give Plaintiff the repayment of his expenditures to perform and in part performance and to put him in as good a position as he was in before the promise was made. _Nashville Lodging Co. v. Resolution Trust Corp._, 59 F.3d 236 (D.C. Cir 1995).  This reliance measure of damages assumes that the Placida loan never came into

existence and puts Placida in the same position it was in before the loan existed, measured as of the date of the appointment of the receiver.

| | |
|---|---|
| Vacant Land value as of October 31, 2008 – per Bass appraisal | $ 810,000.00 |
| Amount outstanding on existing financing prior to Freedom Bank Construction Loan – from closing statement | ($ 402,298.05) |
| | $ 407,701.95 |
| Plus an amount to payoff the loan which is assumed to never to have existed | $1,597,504,20 |
| **Placida's Reliance Damages** | **$ 2,005,206.15** |

**Prejudgment interest** - Placida also seeks an award of pre-judgment interest on the amount of damages awarded by the Court at trial.   FDIC-R argues that Placida is not entitled to pre-judgment interest because Congress has not waived sovereign immunity with respect to the payment of interest.  Further, FDIC-R argues that it is immune from interest on claims against it unless it is operating as a private enterprise.

However, Placida contends that under the 11th Circuit's decision in McMillian, Placida is entitled to its "actual, direct, compensatory damages" resulting from the FDIC-R's breach of the Placida construction loan, limited only by the exclusions set forth in Section 1821(e)(3)(B)  which excludes  only claims for punitive or exemplary damages, damages for pain and suffering, and damages for lost profits or opportunities, and not claims for pre-judgment interest.

 Further, Placida contends that there are exceptions to the general rule against post insolvency interest on claims against the FDIC where assets of the receivership are sufficient to pay all provable claims in full or where the receiver his shown to be unreasonable or otherwise at fault in denying the

8

claim or administering trust.  Since the FDIC-R was unreasonable in denying Placida's Proof of Claim, it is entitled to pre-judgment interest from the November 6, 2008 repudiation of the loan.

**Attorney's fees and costs** - Placida also contends that it is entitled to an award of prevailing party attorney's fees under the prevailing party fee provision included in paragraph 6.9 of the loan agreement, and under separate provisions in both the note and mortgage.  FDIC-R argues that Placida is not entitled to an award of attorney's fees and costs because such an award would violate the rule that the assets of a failed institution should be ratably distributed amongst its creditors.  Placida contends that this rule does not apply where recovery of attorney's fees is specified in the parties' contract, as is the case in this action, since the loan agreement, note and mortgage that were breached by FDIC-R through its repudiation of the same each included a prevailing party attorney's fee provision.

**Payment in Receiver's Certificates and Setoff** - FDIC-R has alleged affirmative defenses that any damages awarded to Placida are payable in receiver's certificates to be used to setoff the amount that Placida owes under the Placida loan. [DKT. 23-5, 6].  Placida agrees with these defenses.1

**FDIC-R's successor in interest is bound by any judgment entered by this Court** - It is admitted by Placida that the loan in question was transferred to Multibank 2009-1 CML ADC Venture, LLC after the complaint was filed in this matter.  Placida seeks a finding from this Court that any judgment entered by this Court is binding against FDIC-R's successor, Multibank.

## ARGUMENT AND CITATION TO AUTHORITY

This is a case of first impression in any Federal Court - an action to decide the amount of

repudiation damages to be awarded to a borrower under a loan agreement repudiated by FDIC-R pursuant to FIRREA.  While there are several cases discussing damages for cessation of payments under a construction loan or line of credit, there are no published cases that determine the amount of damages to be awarded when the FDIC-R repudiates not only the portion of a construction loan providing for construction funds, but ***also repudiating payments from the interest reserve establishing for the specific purpose of making interest payments until the project was completed and stabilized.***

In this action, Placida seeks a review of the FDIC-R's denial of its Proof of Claim.   While the FDIC enjoys broad discretion in determining whether or not to repudiate a contract of the failed banking institution[5],    FDIC-R also has a duty to resolve claims in fair and expeditious manner. Damiano v. FDIC, 104 F. 3d 328 (11th Cir. ) (identifying FIRREA's aim of the "expeditious[ ] and fair[ ]" resolution of claims against failed financial institutions in federal receivership and its concern for conserving judicial resources). *See* H.R.Rep. No. 54(I), 101st Cong., 1st Sess. 419 (1989),

---

[5]  FDIC–R enjoys broad powers granted to it by statute, but these powers are not without limits. By statute, FDIC–R succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, account holder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution.12 U.S.C. § 1821(d)(2)(A)(i). But despite the receiver's significant authority to resolve the affairs of a failed bank, see, e.g., *Nashville Lodging Co. v. Resolution Trust Corp*., 59 F.3d 236, 247 (D.C.Cir.1995) FDIC–R does not enjoy *carte blanche,* for "there is no federal policy that the [deposit insurance] fund should always win." *O'Melveny & Myers v. FDIC,* 512 U.S. 79, 88, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Courts have ruled numerous times that, despite its "800–pound gorilla"-like statutory powers, *Nashville Lodging*, 59 F.3d at 243, the FDIC overstepped its legal authority, see, e.g., *Ernst & Young*, 374 F.3d at 584; *Sharpe v. FDIC*, 126 F.3d 1147, 1155, 1157 (9th Cir.1997);*Waterview Management Co. v. FDIC*, 105 F.3d 696, 701–02 (D.C.Cir.1997); cf. *Nashville Lodging*, 59 F.3d at 246.

*reprinted in* 1989 U.S.C.C.A.N. 86, 215.[6]

Furthermore, it is well settled that the rights and liabilities of a bank and the bank's debtors and creditors are fixed at the declaration of the bank's insolvency. *American National Bank v. FDIC*, 710 F.2d 1528 (11th Cir. 1983 )(citing *First Empire Bank v. FDIC,* 572 F.2d 1361, 1367-68 (9th Cir.), *cert. denied* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); *FDIC v. Grella,* 553 F.2d 258, 262 (2d Cir.1977); *Kennedy v. Boston-Continental National Bank,* 84 F.2d 592, 597 (1st Cir.1936), *cert. denied* 300 U.S. 684, 57 S.Ct. 667, 81 L.Ed. 887 (1937)).   In the context of this action, because the rights and liabilities of both the FDIC-R and Placida are fixed as of the date of the appointment of the receiver, neither interest or late fees can accrue to the Placida loan after the October 31, 2008 date of appointment of the Receiver.

The court's review of the denial of Placida's claim in this action is de novo. *Helm v. Resolution Trust Corp.,* 43 F.3d 1163, 1165  (7th Cir. 1995) (stating that after the denial of a Proof of Claim "the dissatisfied claimant may avoid further dealing with the RTC[7]. He may return to square one, and, under 12 U.S.C. § 1821(d)(6)(A), file suit against the RTC in federal district court, not for review of the RTC's disallowance, but for relief on the underlying claim. Such a suit ignores the RTC's disallowance and allows de novo examination of the claim by the federal courts.  12

---

[6]   The House report explains the purpose of FIRREA's administrative procedure as follows: The claims determination procedure ... enables the FDIC [or RTC] to dispose of the bulk of claims against failed financial institutions expeditiously and fairly.... Thus, the claim resolution process established in this section should allow the FDIC [or RTC] to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts.

[7]   The Resolution Trust Corporation ("RTC")  was the statutory predecessor to the FDIC. *See, e.g.*, *Resolution Trust Corp. v. First American Bank*, 155 F.3d 1126, 1127 (9th Cir.1998) (stating that the RTC was the FDIC's predecessor). The RTC was abolished in 1995, and replaced by the FDIC.  *See* 12 U.S.C. § 1441a(m)(1).

U.S.C. § 1821(d)(6)(A)").      In making this fresh and independent determination, therefore, the Court may consider any and all evidence relating to the claim, regardless of its presentation to the FDIC during the claims review process.  *Id.*

Placida seeks this fresh and independent review of this court in determining the amount of damages suffered by Placida resulting from the FDIC-R's repudiation of its construction loan.

### Common Law on Repudiation of Contracts

It is the generally accepted rule that in the case of a bilateral contract for an agreed exchange of performances, a repudiation of a duty by one of the parties terminates the duty of the other. It gives to the latter the legal privilege of refusing to render the return performance; if sued for such refusal, the plaintiff's repudiation is a good defense.  4 Arthur Linton Corbin, *Corbin on Contracts* § 975 (1951 & 1999 Supp. by Lawrence A. Cunningham & Arthur J. Jacobson). According to this common law rule, the termination of any contract by the FDIC would discharge any duty owed by the non-breaching party under the agreement.  *WRH Mortgage Inc. v. FDIC*, 214 F. 3d 528 (4th Cir. 2000)

Furthermore, the common law authorizes an action for money damages (or, in an appropriate case, for specific performance) on a contract that is breached by repudiation. 4 *id.* § 948.  Pursuant to the Restatement of Contracts § 253,

> **(1)      Where an obligor repudiates a duty before he has committed a breach by non-performance and before he has received all of the agreed exchange for it, his repudiation alone gives rise to a claim for damages for total breach.**
>
> **(2)      Where performances are to be exchanged under an exchange of promises, one party's repudiation of  a duty to render performance discharges the other party's remaining duties to render performance.**

12

A party's liability for damages for a "garden-variety" contract repudiation is set forth in the U.S. Supreme Court Case of *Mobil Oil v. U.S.*, 530 U.S. 604, 120 S. Ct. 2423 (2000).

> As set forth in the Restatement of Contracts, "repudiation" is a "statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach." *Restatement of Contracts,* § 250. And "total breach" is a breach that "so substantially impairs the value of the contract to the injured party at the time of the breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance." *Id.,* § 243.

Thus, as established by the U.S. Supreme Court in *Mobil,* the general measure of damages for the repudiation of a contract is damages for a total breach of contract. *Mobil*, 120 S. Ct. at 2429.

Therefore, under the common law, upon the FDIC-R's repudiation of any contract, the non-breaching party would be entitled to discharge its remaining duties to render performance and sue the FDIC-R for damages for a total breach of contract.

However, pursuant to Section 1831(e)(3), in the instance where the repudiating party to a contract is the FDIC acting as receiver for a failed banking institution, FIRREA limits the non-breaching party's damages to "actual, direct, compensatory damages" by excluding certain categories of damages from the general measure of damages set forth in *Mobil*.

Section 1831(e)(3) provides:

**(3) Claims for damages for repudiation**

(A) In general

> Except as otherwise provided in subparagraph (C) and paragraphs (4), (5), and (6), the liability of the conservator or receiver for the disaffirmance or repudiation of any contract pursuant to paragraph (1) shall be--

> i) limited to actual direct compensatory damages; and

13

(ii) determined as of--

(I) the date of the appointment of the conservator or receiver; or

(II) in the case of any contract or agreement referred to in paragraph (8), the date of the disaffirmance or repudiation of such contract or agreement.

(B) No liability for other damages

For purposes of subparagraph (A), the term "actual direct compensatory damages" does not include--

(I) punitive or exemplary damages;

(ii) damages for lost profits or opportunity; or

(iii) damages for pain and suffering.

In *McMillian v. FDIC*, 81 F.3d 1041 (11th Cir. 1996), the 11th Circuit reviewed the definition of "actual, direct, compensatory damages" and focused its analysis upon the plain meaning of the statutory language set forth therein.  In finding that the term "actual, direct, compensatory damages" included severance payments to a terminated bank employee, the court stated:

"**Compensatory damages**" are defined as those damages that "will compensate the injured party for the injury sustained, and nothing more; such as will simply make good or replace the loss caused by the wrong or injury." Black's Law Dictionary (6th Ed.1991). "**Actual damages**," roughly synonymous with compensatory damages, are defined as "[r]eal, substantial and just damages, or the amount awarded to a complainant in compensation for his actual and real loss or injury, as opposed ... to 'nominal' damages [and] 'punitive' damages." *Id.*  Finally, "**[d]irect damages** are such as follow immediately upon the act done." *Id.*  Thus, "actual direct compensatory damages" appear to include those damages, flowing directly from the repudiation, which make one whole, as opposed to those which go farther by including future contingencies such as lost profits and opportunities or damages based on speculation.

The 11th Circuit further reviewed the exclusions set forth in Section 1821(e)(3)(B) in the context of

14

the damages sought by the Plaintiff, McMillian and stated:

> [the damages sought by Plaintiff] are not at all like the listed exclusions. The damages here are clearly not in the nature of punitive damages. . . Similarly, such damages are clearly not in the nature of profits or damages for pain and suffering.

Thus, the 11th Circuit Court employed the "total breach" measure of damages as set forth in *Mobil* and evaluated and potentially lessened that measure of damages by the listed exclusions set forth in Section 1821(e)(3)(B).  Finding that the damages sought against the FDIC in *McMillian* were not punitive or exemplary damages, nor were they damages for lost profits or opportunity, nor were they damages for pain and suffering, the 11th Circuit awarded McMillian's severance damages.

Here, the court is obligated to employ the same analysis and Placida is entitled to an award of damages that will compensate it for a total breach of the Construction Loan Agreement excepting only[8] punitive or exemplary damages, damages for lost profits or opportunity, and damages for pain and suffering.[9]

The ordinary measure of damages for breach of contract is forward-looking and seeks to protect the non-breaching party's "expectation interest": the plaintiff in such a case is given "the value of the expectancy which the [breached] promise created," just as if the contract had gone

---

[8] *Expressio unius est exclusio alterius*, instructs that when certain matters are mentioned in a contract or statute,  other similar matters not mentioned were intended to be excluded*.  American University of the Carribbean v. Caritas Healthcare, Ltd.* 2011 WL 4425308 (11th Cir. 2011)**.**

[9] The court is also obligated to follow the 11th Circuit's analysis in its determination of Plaintiffs' entitlement to pre-judgment interest.  Since Section 1821(e)(3) does not specifically preclude an award of prejudgment interest -  as a general type of damages ordinarily awarded for breach of contract intended to make a Plaintiff whole,  the Court must award pre-judgment interest to Plaintiffs. *See FDIC v. Hickey*, 757 F.Supp 2d 194 (E.D.N.Y. 2010); *Waterview Management Co. v. FDIC*, 257 F. Supp.2d 31 (D.D.C. 2003) (holding that Section 1821(e)(3) does not prohibit the award of prejudgment interest).

through to completion. *L.L. Fuller & William R. Perdue, Jr., The Reliance Interest in Contract Damages* (Part 1), 46 Yale L.J. 52, 54 (1936); see also *Restatement 2d of Contracts* §344(a).

Here, both FDIC-R and Placida have employed an "expectation interest" theory of damages. Both FDIC-R's expert and Placida's expert have valued the damages to the Placida property resulting from the loan repudiation through a dimunition in value analysis, by comparing the "as-is" value of the Property with financing in place to the "as-is" value of the Property without financing in place. *See In re Miraj,* 192 B.R. 297 (D. Mass. 1996); *FDIC v. Parkway Executive Office Center*, 1998 WL 18204 (E.D. Pa. 1998)[10].

In *Parkway Executive*, a case dealing with a similar fact pattern to the instant case, the FDIC repudiated Parkway Executive's construction loan[11]. Parkway Executive sued the FDIC for its damages caused by the repudiation and the FDIC challenged Parkway Executive's dimunition in value theory of damages arguing that this methodology necessarily included lost profits. In evaluating this measure of damages, the court stated:

> There is no illuminating legislative history as to the meaning of the phrase "actual direct compensatory damages." Consequently, courts have looked to the plain meaning of the phrase in determining its scope. We begin with the plain meaning of the phrase ... **[A]ctual direct compensatory damages appear to include those damages, flowing directly from the repudiation, which make one whole**, as opposed to those which go farther by including future contingencies such as lost profits and opportunities or damages based on speculation (emphasis added).

(citing to *McMillian v. FDIC*, 81 F.3d 1041, 1054–55 (11th Cir. 1041). The Court continued:

---

[10]  Both FDIC-R and Placida agree that the "dimunition in value" approach employed in the *Parkway Executive* case is one potential approach to valuing Placida's damages in this action. However, because the repudiation of the Placida loan is set to result in a total loss of the property to Placida, it is not a full measure of damages suffered by Placida.

[11]     There is no mention in the case that interest payments were to be made from the loan.

> **The Court is convinced that damages for diminution in value are "actual, direct, compensatory" damages recoverable under FIRREA. As a direct result of the repudiation, the building was changed from a partially renovated building with sufficient funding in place for its full development, into an incomplete building with insufficient financing for its completion and subject to foreclosure by the co-lender. Permitting Defendants to present evidence of the diminution in value of the building resulting from the repudiation would simply allow Defendants the possibility of being made "whole."** _McMillian_, 81 F.3d at 1054–55.

> . . . Defendants here simply seek to prove the difference between the value of the building at Five Logan Square with the funding in place "as of" the date the Receiver was appointed, and the value of the building after the repudiation with no such funding in place. _Id._

In the instant case, the dimunition in value measure of damages has been employed both by the FDIC-R and by Placida.

In order to make Placida whole, a measure of damages required by the 11th Circuit Court in _McMillian_, Placida is entitled to an award that restores it to an equity position in the Property, a position it enjoyed as of the date of the appointment of the receiver.   Placida contends that the damages that would "make it whole" is an award of damages sufficient to satisfy the Placida loan, ($1,597,504,20 if fixed as of the date of the appointment of the receiver, pursuant to _American National Bank v. FDIC_, 710 F.2d 1528 (11th Cir. 1983 ) , argued _supra_)   which would  restore Placida to the equity position it enjoyed on the October 31, 2008 date of the appointment of the receiver.

Alternatively, Placida is entitled to dimunition in value damages in the amount of the $960,000.00 as set forth by the expert opinion of Richard W. Bass, MAI, AICP, EAC as set forth in _FDIC v. Parkway Executive Office Center_, 1998 WL 18204 (E.D. Pa. 1998).

Or, an alternative calculation of dimunition in value damages can be determined as the difference between the "As-is" value of the Property with financing in place and the value for the

asset established in the transfer to Multibank[12].

| | |
|---|---|
| As-Is value with financing in place<br>(As established by Bass Appraisal Opinion) | $2,400,000.00 |
| Value of Placida Loan by Multibank at time of sale to establish<br>market value of Project as of date of appointment of receiver | ($ 396,225.55) |
| **Placida's Loss of Market Value Damages** | **$ 2,003,774.45** |

However, where the prospective, "benefit of the bargain" damages prove too difficult or speculative to calculate, courts commonly give the plaintiff damages measured retrospectively, protecting the plaintiff's "reliance interest" by "undoing the harm which his reliance on the defendant's promise has caused him" and "put [ting] him in as good a position as he was in before the promise was made." Fuller & Perdue at 54; see also *Rest. (2d) of Contracts* § 344(b). This back-up remedy gives the plaintiff "the repayment of his expenditures in preparing to perform and in part performance." McCormick, *Damages* § 142 at 583; see also *United States v. Behan*, 110 U.S. 338, 344-45, 4 S.Ct. 81, 83-84, 28 L.Ed. 168 (1884) (non-breaching party may always recover "his loss of actual outlay and expense," even if lost profits are incapable of proof).

This "reliance measure" of damages has also been employed by numerous federal courts when deciding contract repudiation damages in a FIRREA context.   In *Nashville Lodging Co. v. RTC*, 59 F. 3d 236 (D.C. Cir. 1995), the most often cited case for this proposition, the borrower under a loan agreement that had yet to be funded had filed an action against the FDIC acting as receiver for the failed Savers Federal Savings Bank after the FDIC-R repudiated that loan agreement.

---

[12]    Since the FDIC-R sought bids for the assets transferred to Multibank through a bidding process offered to investors on the open market, and because at least 11 bids for the assets were received by FDIC-R, the value established for the Placida loan in the transfer of the asset is a market value of that asset.

The borrower was seeking a return of the significant amount of fees it had paid to acquire the financing commitment.  The RTC argued that since the damages sought were not a "forward looking" expectation theory of damages, Nashville Lodging was not entitled to relief.

However, the D.C. Circuit disagreed with this position stating that just because the damages sought by Nashville Lodging were calculated retrospectively, rather than prospectively, that distinction did not render Nashville Lodging's damages non-compensatory.   As states by the _Nashville Lodging_ court,

> It is true that the ordinary measure of damages for breach of contract is forward-looking and seeks to protect the non-breaching party's "expectation interest": the plaintiff in such a case is given the "the value of the expectancy which the [breached] promise created," just as if the contract had gone through to completion. L.L. Fuller & William R. Perdue, Jr., The Reliance Interest in Contract Damages (Part 1), 46 Yale L.J. 52, 54 (1936); see also _Rest. (2d) of Contracts_ § 344(a). But where the prospective, "benefit of the bargain" damages prove too difficult or speculative to calculate, courts commonly give the plaintiff damages measured retrospectively, protecting the plaintiff's "reliance interest" by "undoing the harm which his reliance on the defendant's promise has caused him" and "put [ting] him in as good a position as he was in before the promise was made." Fuller & Perdue at 54; see also _Rest. (2d) of Contracts_ § 344(b). This back-up remedy gives the plaintiff "the repayment of his expenditures in preparing to perform and in part performance." McCormick, _Damages_ § 142 at 583; see also _United States v. Behan,_ 110 U.S. 338, 344-45, 4 S.Ct. 81, 83-84, 28 L.Ed. 168 (1884)  (non-breaching party may always recover "his loss of actual outlay and expense," even if lost profits are incapable of proof).

> The fact that reliance damages are backward-looking does not destroy their pedigree as a species of compensatory relief. McCormick emphasizes that

> > This recovery is strictly upon the contract. True, it is not measured according to the principle that the contracting party should be placed in the condition he would be in if the contract had been performed, but is more analogous to the classical measure of 'out-of-pocket' loss.... It does, however, conform to the more general aim of awarding compensation in all cases, and departs from the standard of value of performance only because of the difficulty in applying it.

*Damages,* § 142 at 583-84. For this reason, remedies calibrated to putting the claimant back in the position he occupied before making the repudiated agreement are "actual direct compensatory damages" no less than those aimed to put him where he would have been if the contract had been fulfilled. Both are presumptively recoverable under FIRREA. See *DPJ Co. v. FDIC,* 30 F.3d 247, 249-50 (1st Cir. 1994) (holding that claims for "reliance damages" are not barred by FIRREA).

*Nashville Lodging*, 59 F. 3d at 245-246.

Here, Placida argues that if the court finds that the prospective-looking "expectation interest" measure of damages is not adequate to afford Placida complete relief, the court can award Placida with its reliance damages resulting from the FDIC-R's repudiation of the Placida loan.  In doing so, it will be the court's goal to award Placida with sufficient damages to put Placida back into the position it occupied before making the repudiated agreement.  Placida concedes that the court's determination of the amount of reliance damages should be ascertained considering the value of the Placida property as of the date of the October 31, 2008 appointment of the receiver rather than at the time the property was contributed to the LLC on February 28, 2007 date of the execution of the loan documents.

Thus, an appropriate award of reliance damages for the FDIC-R's repudiation of the Placida construction loan would consist of damages sufficient to satisfy the Placida loan because the loan is assumed never to have existed, plus the value of the vacant land as of the date of the appointment of the receiver.

Vacant Land value
  as of October 31, 2008 – per Bass appraisal

|  |  |
|---|---|
|  | $  810,000.00 |

Amount outstanding on existing financing prior to Freedom Bank
Construction Loan – from closing statement

|  |  |
|---|---|
|  | ($  402,298.05) |
|  | $  407,701.95 |

Plus an amount to payoff the loan which is
  assumed to never to have existed                     $1,597,504,20

**Placida's Reliance Damages**                 **$ 2,005,206.15**

Therefore, in determining the amount of Placida's damages, this court should first look to see if it can fashion an appropriate remedy to "make Placida whole" using a forward-looking expectation interest measure of damages, under a dimunition in value theory.   However, if these "benefit of the bargain" damages prove too difficult or speculative to calculate or are not adequate to afford Placida complete relief, the court should award Placida damages measured retrospectively, protecting Placida's "reliance interest" by "undoing the harm which its reliance on the failed bank's promise has caused Placida  and "put [ting] Placida in as good a position as it was in before the promise was made."

### Placida's Entitlement to Prejudgment Interest

Placida also seeks an award of pre-judgment interest on the amount of damages awarded by the Court at trial.   FDIC-R argues that Placida is not entitled to pre-judgment interest because Congress has not waived sovereign immunity with respect to the payment of interest.  Further, FDIC-R argues that it is immune from interest on claims against it unless it is operating as a private enterprise.

However, Placida contends that under the 11th Circuit's decision in <u>McMillian</u>, Placida is

entitled to its "actual, direct, compensatory damages" resulting from the FDIC-R's breach of the Placida construction loan, limited only by the exclusions set forth in Section 1821(e)(3)(B) which excludes only claims for punitive or exemplary damages, damages for pain and suffering, and damages for lost profits or opportunities, *and not claims for pre-judgment interest*. *See also*, *Waterview Management Co. v. FDIC*, 257 F. Supp.2d 31 (D.D.C. 2003) (holding that Section 1821(e)(3) does not prohibit the award of prejudgment interest).

Further, Placida is also entitled to an award for pre-judgment interest because there is an exception to the general rule upon which FDIC-R relies. If the assets of the receivership are sufficient to pay all provable claims in full or where the receiver has shown to be unreasonable or otherwise at fault in denying the claim or administering trust, an award of prejudgment interest is permitted . *Citizens State Bank of Lometa v. FDIC*, 946 F. 2d 408 (5th Cir. 1991)(citing *Ticonic National Bank v. Sprague*, 303 U.S. 406, 58 S. Ct. 612, 614, 82 L. Ed 926 (1938) and *Fash v. First National Bank*, 89 F. 2d 110, 112 (10th Cir. 1937).

In this action, there is sufficient evidence to show that the FDIC-R was unreasonable in denying Placida's Proof of Claim because FDIC-R has admitted that the loan was in good standing in all respects as of the October 31, 2008 date of the appointment of the receiver. Further, it is undisputed that attached to Placida's Proof of Claim was a document, the Freedom Bank loan disbursement ledger, that evidenced that the October 2008 interest payment had been made from the interest reserve. Nonetheless, FDIC-R's reason for denying Placida's claim was that the loan was in default as of October 2008.

This is clearly an unreasonable denial of Placida's claim and as such, Placida is entitled to an award of pre-judgment interest from the November 6, 2008 repudiation of the loan. *FDIC v.*

*Hickey*, 757 F.Supp 2d 194, 198 (E.D.N.Y. 2010).

**Placida's Entitlement to Attorney's Fees**

Placida also contends as a result of the court's award of partial summary judgment of liability against FDIC-R, Placida is the prevailing party to this litigation, regardless of the amount of damages the court awards. *Trytek v. Gale Industries*, 3 So. 3d 1194 (Fla. 2009); *Moritz v. Hoyt Enterprises*, 604 So. 2d 807 (Fla. 1992).

As such, Placida is entitled to an award of prevailing party attorney's fees under the prevailing party fee provision included in paragraph 6.9 of the loan agreement, and under separate provisions in both the note and mortgage, supplemented by Section 57.105(7), Florida Statutes which provides that an attorney's fee provision in a contract benefitting one party is deemed to benefit both parties to the contract.

FDIC-R argues that  Placida is not entitled to an award of attorney's fees and costs because such an award would violate the rule that the assets of a failed institution should be ratably distributed amongst its creditors.  However, FDIC-R fails to acknowledge that this rule does not apply where recovery of attorney's fees is specified in the parties' contract, as is the case in this action, since the loan agreement, note and mortgage that were breached by FDIC-R through its repudiation of the same each included a prevailing party attorney's fee provision. *FDIC v. Scott*, 125 F. 3d 254 (5th Cir 1997)(stating that if attorney's fees are provided for contractually, the parties may seek them from the receivership assets); *RTC v. Titan Financial Corp.*, 36 F. 3d 891 (9th Cir. 1994) (holding that attorney's fees awarded to personal guarantor of mortgage was entitled to award of attorney's fees paid by receiver's certificates).

FDIC-R also argues that the fee provision contained in paragraph 7.1 of the loan agreement

23

is a limited provision which applies only if the lender is deemed to be a partner or joint venturer with the Borrower.   However, it ignores the very general and very broad attorney's fee provision contained in paragraph 6.9 of that same agreement which provides:

**6.9 Borrower shall pay all reasonable fees of lender in connection herewith, including, but not limited to, reasonable attorney's fees.**

Since paragraph 6.6 of the loan agreement provides that the loan documents shall be governed by the laws of Florida, and because FDIC-R has previously stipulated that Florida law governs any necessary interpretation of the loan documents in this matter, considering the mutual attorney's fee provision set forth in Section 57.105(7), Placida is clearly entitled to an award of attorney's fees resulting from the FDIC-R's breach of the loan agreement.

Likewise, even if the court does not find that the attorney's fee provision contained in paragraph 6.9 of the loan agreement entitles Placida to an award of its prevailing party attorney's fees, additional provisions are included in both the note and mortgage.

Page 3 of the note provides:

**in the case this Note is collected by law or through an attorney at law, or under advice therefrom, the undersigned agrees to p ay all cost of collection, including reasonable attorney's fees.**

Paragraph 9 of the Mortgage provides:

**9.   <u>COSTS, EXPENSES, AND ATTORNEYS' FEES</u>.   In the event of a default under the terms of this Mortgage, the Note, or any other loan documents executed in connection herewith, or any renewals or extensions thereof, Mortgagor shall pay all costs, expenses and reasonable attorneys' fees incurred in the collection (whether by suit or otherwise) hereof, including those costs, expenses and reasonable attorneys' fees in appellate proceedings.**

Therefore, since the loan documents at issue in this case include 3 separate attorney's fee

provisions any one of which would be sufficient to entitle Placida to an attorney's fee award, and, as a result of the court's award of partial summary judgment in favor of Placida on the issue of liability, Placida is the prevailing party to this action and is entitled to an award of its reasonable attorney's fees and costs.

### Payment in Receiver's Certificates and Setoff

Plaintiffs do not dispute the FDIC-R**'s** first affirmative defense that any damages awarded against the FDIC-R in excess of amounts owed by Plaintiffs to the FDIC-R can be paid in the form of receiver's certificates, in advance of a final distribution of assets.  *Resolution Trust Corp. as Receiver for Occidental Nebraska Savings, FSB v. Titan Financial Corp.*, 36 F.3d 891 (9th Cir. 1994); *FDIC v. Hickey*, 2010 WL 5151327 (E.D.N.Y., Dec. 13, 2010).

Placida also does not dispute the FDIC-R's setoff defense.  It is agreed that any damages awarded by this Court must be setoff to amounts owed by Placida to the FDIC-R (or its successors), measured as of the date of the receivership, pursuant to 12 U.S.C. §1821(e)(3)(A)(ii).  *See, e.g., Federal Deposit Insurance Corp. v. Parkway Executive Office Center,* 1998 WL 18204 (E.D. Pa. 1998) (permitting claims of offset and recoupment in action for damages based upon FDIC's repudiation of contract); *Federal Deposit Insurance Corp. v. Grant,* 157 F. 3d 697 (9th Cir. 1998)(permitting setoff of repudiation damages against amounts owed on promissory notes)*; Grant County Savings and Loan v. Resolution Trust Corp.*, 770 F. Supp. 1374 (E.D. Ark. 1991)(permitting setoff of claims or demands between the RTC and savings association related to loan participations); *Interfirst Bank Abilene, N.A. v. Federal Deposit Insurance Corp.*, 777 F. 2d 1092 (5th Cir. 1985)(permitting setoff of Interfirst's account against debts of Interfirst); *Villafane Neris v. Citibank, N.A.*, 845 F. Supp 930 (D. P.R. 1994)(permits FDIC to setoff CD to loan balance).

Therefore, the court's judgment in this matter should include a finding that Placida's

damages may be paid by the FDIC-R in the form of receiver's certificates to be set-off against the amounts owed to FDIC-R.

### The Court's Judgment in this Action is Binding on FDIC-R's Successors

Although FDIC-R alleged an affirmative defense in this action that "Plaintiff's damages must be setoff to any amounts owed by Plaintiffs to the FDIC", it now contends that this court cannot order a setoff because Multibank is the current owner of the Placida construction loan and is not a party to this suit. [DKT. 65-11]

However, it is undisputed that the Placida loan was transferred after the commencement of this action - after a claim to the asset being transferred was made through the Proof of Claim and after this litigation commenced[13].

Rule 25(c) speaks to the situation in which "an interest is transferred" during the pendency of an action. If an interest has been transferred prior to commencement of the suit, Rule 17, requires that an action be brought in the name of the real party in interest.

Rule 25(c) provides in pertinent part:

**(C) Transfer of Interest. If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party.**

The most significant feature of Rule 25(c) is that it does not require that anything be done after an interest has been transferred. The action may be continued against the original party, and the judgment will be binding on the successor in interest even though the successor is not named. 7C,

---

[13]   It appears that this "transfer the ball" tactic is one regularly employed by FDIC-R in an effort to thwart a party's claim to repudiation damages and setoff. *See FDIC v. Bristol Home Mortgage Lending, LLC*, 2009 WL 2488302 (S.D. Fla. 2009); *FDIC v. Tisch*, 89 F.R.D. 446 (E.D.N.Y. 1981).

Alan Wright, Arthur R. Miller, Mary Kay Kane, *Federal Practice and Procedure*, § 1958 (3rd ed. 2010)(citing *Barger v. City of Cartersville*, 348 F.3d 1289 (11th Cir. 2003) and *Matter of Covington Grain Co., Inc.* 638 F. 2d 1632 (5th Cir. 1981)). Rule 25(c) provides that **on motion**, the Court can order the transferee to be substituted in the action or joined with the original party.

Multibank has been aware of the pendency of this action since its inception, understanding the fact that FDIC-R is an owner of a 60% interest in Multibank.   Notwithstanding FDIC-R's ownership interest in the transferee, Multibank, Rialto, Multibank's private sector partner and the Managing Member of Multibank, has also had actual notice of the pendency of this litigation since the foreclosure filed by Multibank in state court has been stayed pending the outcome of our trial. **Exhibit 1**.

If Multibank had any concerns about the outcome of this action and its affect upon the Placida loan it now owns, it had ample opportunity to file a Motion for Substitution of Parties or a Motion to Intervene in this action.  It did neither.

Since it did not, Rule 25 provides that the action continue unabated against the original parties hereto, and that even though not named in this action, Multibank is bound by this court's judgment. *Kloster Speedsteel AB v. Crucible, Inc.*, 793 F. 2d 1565 (Fed. Cir. 1986).

## CONCLUSION

At trial, Placida demands the following relief:

1.   Judgment for damages in an amount to make Placida whole,

    A)   based on Placida's expectation interest in the Placida loan in the amount **$2,003,774.45** of the loss of market value measured as the difference between the "as-is" before repudiation value established by Appraiser Bass and the value of the Placida loan as established in the transfer to Multibank;

    Or

B)      based on Placida's expectation interest in the Placida loan in the amount **$960,000.00** dimunition in value suffered by the Placida property as a result of the repudiation of the Placida loan, as established by Appraiser Bass;

Or

C)      based upon a damage calculation that makes Placida whole as of the date of the appointment of the receiver in the amount of **$2,400,000.00** market value of the Placida property with the Placida loan in place, as established by Appraiser Bass;

Or

D)      based on Placida's reliance damages in an amount to put Placida in the position it was in before the loan was commenced, measured as of the date of the appointment of the receiver in the amount of **$ 2,005,206.15**.

2.      A finding that the rights and liabilities of a bank and the bank's debtors and creditors are fixed at the declaration of the bank's insolvency, precluding the continued accrual of interest and late fees to the Placida loan after October 31, 2008 and fixing the loan amount at the $1,597,504.20 actually drawn from the loan;

3.      A finding that FDIC-R was unreasonable in denying Placida's Proof of Claim, thus entitling Placida to an award of pre-judgment interest calculated as of the November 6, 2008 repudiation of the Placida loan;

4.      A finding that Placida is entitled to an award of prevailing party attorney's fees under the prevailing party fee provision included in paragraph 6.9 of the loan agreement, and under separate provisions in both the note and mortgage, supplemented by Section 57.105(7) with the amount to be determined pursuant to Rule 54;

5.      A finding that Placida's damages may be paid by the FDIC-R in the form of receiver's certificates to be set-off against the amounts owed to FDIC-R or its successors in interest to the Placida loan;

6.      And for such other relief as the Court deems proper.

### Certificate of Service

I CERTIFY that a copy of the foregoing has been provided via CM/ECF to Michael H. Rosen, Attorney for Defendant, 201 E. Kennedy Blvd, Suite 600, Tampa, Florida 33602 on December 15, 2011.

**THE EDWARDS LAW FIRM, PL**
**1901 Morrill Street**
**Sarasota, Florida 34236**
**Telephone: 941-363-0110**

**Facsimile: 941-952-9111**
**sedwards@edwards-lawfirm.com**
**Counsel for Placida**


**By: /s/ Sheryl A. Edwards**
        **Sheryl A. Edwards**
        **Florida Bar No.: 0057495**