UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**PLACIDA PROFESSIONAL CENTER, LLC**, a Florida
Limited Liability Company,

                  **Plaintiffs,**

vs.                                                      **CASE NO. 8:2009 CV 02221-T30 MAP**

**FEDERAL DEPOSIT INSURANCE CORPORATION,** as
Receiver for Freedom Bank,

                  **Defendant.**
_____/

**PLACIDA'S RESPONSE TO FDIC-R's
MOTION FOR RECONSIDERATION and INCORPORATED
MEMORANDUM OF LAW**

Plaintiff, PLACIDA PROFESSIONAL CENTER, LLC, ("Placida") hereby files its response to Defendant, FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver ("FDIC-R") for Freedom Bank's, MOTION TO RECONSIDER AND ALTER OR AMEND THE FINAL JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF [DKT 122] and states as follows:

**INTRODUCTION**

In its Motion for Reconsideration [DKT 122], FDIC-R argues that the court made 3 clear errors of law at trial: 1) in awarding damages to Placida; 2) in ordering setoff[1] of Placida's judgment against the outstanding balance of the loan; 3) and, in determining that Placida is entitled to an award of attorney's fees and costs as the prevailing party. However, FDIC-R has not demonstrated any

---

[1] Although the introduction section of FDIC-R's Motion for Reconsideration asks the Court to reconsider its setoff of Placida's damages against the outstanding balance of the loan, FDIC-R provides no argument in support of this request in its Motion.

clear error of law made by the Court and as such, FDIC-R's Motion for Reconsideration must be denied.

## PROCEDURAL BACKGROUND

On December 19-20, 2011, this Honorable Court presided over the non-jury trial in this matter to determine Placida's damages[2] resulting from the FDIC-R's repudiation of Placida's Construction Loan shortly after it was appointed as the receiver of the failed Freedom Bank.

At trial, the Court heard the testimony of 3 witnesses to establish Placida's damages. Placida called Michael B. Edwards as the company representative for Placida Professional Center, LLC and expert witness-appraiser Richard Bass, MAI. FDIC-R's sole witness was expert witness-appraiser Chad Durrance, MAI.

At trial, both appraisers agreed that *Placida had equity in the Property as of the date of the appointment of FDIC-R as receiver*[3] (meaning, that the Placida property was worth more than the amount drawn on the construction loan). And, both experts utilized a dimunition in value approach to valuing Placida's damages, an approach to damages aimed at restoring Placida's expectation interest in the construction loan that was repudiated by the FDIC-R.

Placida also presented argument and evidence that as an alternative measure of damages,

---

[2] On October 18, 2011, the Court entered Partial Summary Judgment in Placida's favor on the issue of liability of the FDIC-R for Placida's damages. [DKT. 74]

[3] Placida's expert, Richard W. Bass, MAI, AICP, EAC rendered the opinion that the Property was worth $2,400,000 in its as-is condition with financing in place as of October 31, 2008; FDIC-R's expert, Chad Durrance, MAI has rendered the opinion that the Property was worth $1,760,000 in its as-is condition with financing in place as of that date. On October 31, 2008, the amount due on the loan was $1,597,504.20. As such, under Bass' opinion of value, Placida had $802,495.80 in equity in the property; under Durrance's calculation, Placida had $160,000 in equity on October 31, 2008.

Placida is entitled to reliance damages[4] intended to make contracting party whole after a breach that gave Placida the repayment of its expenditures to perform and in part performance and to put it in as good a position as it was in before the promise was made. *Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236 (D.C. Cir 1995). This reliance measure of damages assumes that the Placida loan never came into existence and puts Placida in the same position it was in before the loan existed, measured as of the date of the appointment of the receiver.

| | |
|---|---:|
| Vacant Land value as of October 31, 2008 – per Bass appraisal | $ 810,000.00 |
| Amount outstanding on existing financing prior to Freedom Bank Construction Loan – from closing statement | ($ 402,298.05) |
| | $ 407,701.95 |
| Plus an amount to payoff the loan which is assumed to never to have existed | $1,597,504,20 |
| **Placida's Reliance Damages** | **$ 2,005,206.15** |

Significant argument was made by FDIC-R during trial that Appraiser Bass' testimony as to the percentage discount[5] from the as-is with financing value which represented Placida's damages should be stricken or should be considered inadmissible because it was speculative, because Bass allegedly relied upon "non-sales" in his diminution of value approach, because Bass used foreclosure sales without making any adjustments. At each instance, the Court overruled FDIC-R's objection

---

[4] Where the prospective, "benefit of the bargain" or expectation interest damages prove too difficult or speculative to calculate, courts commonly give the plaintiff damages measured retrospectively, protecting the plaintiff's "reliance interest" by "undoing the harm which his reliance on the defendant's promise has caused him" and "put[ting] him in as good a position as he was in before the promise was made." *L.L. Fuller & William R. Perdue, Jr., The Reliance Interest in Contract Damages* (Part 1), 46 Yale L.J. 52, 54 (1936); see also *Rest. (2d) of Contracts* § 344(b).

[5] At trial and in FDIC-R's Motion for Reconsideration, FDIC-R does not challenge the admissibility of Appraiser Bass' testimony as to his valuation of the property as-if vacant, or his valuation of the property in its as-if complete state, or his valuation of the property in its as-is with financing in place which support Placida's reliance measure of damages.

or denied FDIC-R's motion and admitted the testimony of Appraiser Bass.

At the close of all evidence and argument, the Court adopted the appraisal of Appraiser Bass and ruled that Placida was entitled to an award of damages in the amount of $960,000.00, plus attorney's fees pursuant to the loan agreement, note and mortgage. The Court also ordered Placida's damages to be setoff against the $1,597,504.20 loan balance, fixed as of October 31, 2008. The Court rejected FDIC-R's argument that the damages award should be paid in receiver's certificates, partly as a result of FDIC-R's pleading of setoff as an affirmative defense to Placida's Complaint.

Now, FDIC-R seeks reconsideration of each of the Court's 3 rulings awarding damages, setoff and attorneys fees and costs to Placida. However, for the reasons stated herein, FDIC-R's Motion for Reconsideration should be denied.

**STANDARD OF REVIEW**

There are three grounds that justify granting a motion for reconsideration: 1) an intervening change in controlling law; 2) the availability of new evidence; or 3) the need to correct clear error or prevent manifest injustice. *True v. Commissioner of the I.R.S.*, 108 F. Supp.2d 1361, 1365 (M.D. Fla. 2000).

A motion for reconsideration is not a vehicle for rehashing arguments the Court has already rejected or for attempting to refute the basis for the Court's earlier decision. *Lamar Advertising of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 490 (M.D.Fla.1999); *see also Michael Linet, Inc. v. Village of Wellington,* 408 F.3d 757, 763 (11th Cir.2005).

Rather, reconsideration is an extraordinary remedy to be employed sparingly. When evaluating a motion to reconsider, a court should proceed cautiously, realizing that in the interests of finality and conservation of scarce judicial resources, reconsideration of a previous order is an

extraordinary remedy to be employed sparingly. *Lamar Adver. of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 489 (M.D.Fla.1999). In accordance with that principle, a motion to reconsider must demonstrate why the court should reconsider its decision and set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision. *SEC v. Seahawk Deep Ocean Tech., Inc.*, 74 F.Supp.2d 1188, 1192 (M.D.Fla.1999).

This ordinarily requires a showing of 'clear and obvious error' where the interests of justice demand correction. *Prudential Sec., Inc. v. Emerson,* 919 F.Supp. 415, 417 (M.D.Fla.1996) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assoc., Inc.*, 763 F.2d 1237, 1239 (11th Cir.1985)).

Moreover, this Court should not reconsider a previous ruling when a "party's motion fails to raise new issues and, instead, only relitigates what has already been found lacking." *Lamar Adver. of Mobile, Inc.*, 189 F.R.D. at 489 (citing *Gov't Pers. Serv., Inc. v. Gov't Pers. Mut. Life Ins. Co.*, 759 F.Supp. 792, 793 (M.D.Fla.1991)).

Additionally, this Court should not reconsider its rulings made at trial based on new arguments "which could, and should, have been previously made." *Scelta v. Delicatessen Support Servs., Inc.,* 89 F.Supp.2d 1311, 1320 (M.D.Fla.2000) (internal brackets, citations and quotations omitted). A party who fails to present its strongest case in the first instance generally has no right to raise new theories or arguments in a motion for reconsideration. *Villaflores v. Royal Venture Cruise Lines, LTD.*, 1997 WL 728098, *2, (M.D.Fla. Nov. 17, 1997).

"Clear error" can simply mean an error an obvious, plain, gross, significant, or manifest error or miscalculation. *Concrete Pipe and Products of California v. Construction Laborers Pension Trust*, 508 U.S. 602, 113 S.Ct. 2264 (1993) (citing to Black's Law Dictionary). "Clear error" is one that is "so obvious," such as the application of the wrong sentencing guideline, *United States v. Lett*,

5

483 F.3d 782, 788 (11th Cir.2007).

Arguable error is one thing. Clear error is another. <u>U.S. v. Lett</u>, 483 F.3d at 788.

## ARGUMENT

In its motion, FDIC-R does not cite to any new caselaw, nor does FDIC-R provide any new evidence to support its Motion. Rather, FDIC-R argues that each of the 3 rulings made by the Court in favor of Placida and against FDIC-R at trial were clearly in error.

In its first argument, FDIC-R argues that the Court was clearly in error in awarding damages to Placida because Placida failed to satisfy its burden to prove its damages. At trial, the FDIC-R worked incessantly to strike Appraiser Bass's testimony as to the dimunition in value to the property caused by the repudiation of Placida's construction loan based upon the very same arguments being presented in the instant motion. *See e.g.* Trial Trans. Vol 1, pp. 112-114 for argument made by FDIC-R during testimony of Appraiser Bass refreshing arguments made in FDIC-R's Second Motion in Limine [DKT. 85]. In seeking to prohibit the introduction of Plaintiff's Exhibit 22 into evidence (which set out the 3 partially completed comparable properties used by Bass to derive the discount for the distress to the property caused by the repudiation), counsel for FDIC-R argued:

> Your Honor, if there's -- if there's insufficient evidence
> out there, it's the Plaintiff's burden of proof to come
> forward and show credible evidence of damages. If the data
> that they're relying upon doesn't -- if you're not able to
> make any reasonable conclusions, then you can't make a
> conclusion from that.
>
> And the Plaintiff, you know -- based upon that
> data, there's no reasonable conclusions that could be made.
> You can't compare non-sales of property based on the amount
> in a deed and compare that and somehow derive a percentage
> to apply to the subject property. It makes no sense.

6

THE COURT: Response?

MS. EDWARDS:
I think he's misinterpreting what's happening in each of these three sales. First of all, I would like to indicate that the Court's motion in limine -- the motion in limine that was granted was not granted as to this particular analysis. In fact, counsel filed a second motion in limine with respect to what he's arguing now, which was denied by the Court.

The three properties that are represented in these comparables are indeed sales. They are sales where the property was taken back by the lender and either sold -- actually -- either competitively bid at the foreclosure sale with a third party and the Plaintiff in the foreclosure action indicating a -- a competing bid, a market value, if you will; and two of them were actually properties that were taken back by the lender in a foreclosure and subsequently sold on the open market to a third party. So, they are sales.

He indicates that they are somehow not sales. They are sales. They are sales of distressed property taken back by a lender and subsequently sold to a third party, who finished the property, so -- as far as that's concerned. Counsel also makes an argument that it is improper to use foreclosure sales in the appraisal process. He's apparently not aware of a recent release of authority from the Appraisal Institute Guide Note 11 published on August 29th of 2011 that specifically addresses that argument.

Guide Note 11 essentially says that if you are looking at the market, you have to first look at what type of appraisal you are performing. If you are performing an appraisal on a distressed piece of property, the use of short sales and foreclosures is absolutely proper. If you are using -- if you are performing an appraisal on a non-distressed piece of property, the use of foreclosure sales and short sales are -- are probably not appropriate but may be appropriate if there is no other data in the market.
I have appraisal -- I'm sorry, Appraisal Institute Guide Note 11, if the Court would like to review it.

7

>THE COURT: I don't need to see that. I will
>   overrule the objection.
>
>MS. EDWARDS: Thank you, Your Honor.
>
>THE COURT:
>   It's a matter of cross-examination,
>   and foreclosure sales are certainly suspect, but that would
>   be a matter of cross-examination.

And again, at the close of Placida's case in chief, FDIC-R made the same arguments being made in its instant Motion for Reconsideration when it moved judgment on partial findings under Rule 52. Counsel for FDIC-R argued that:

> the speculative nature of the testimony from Mr. Bass, the fact that he's relied upon non-sales in his diminution of value approach. He's used foreclosure sales without making any adjustments. He has three sales or transfers and I think it's counter-intuitive that the one with the most - - the most complete has the highest percentage. I don't think it comports with the *Daubert* test and I don't believe that the [Plaintiff] has met its burden.

[Trial Trans. Vol 1, p. 178].

However, the Court overruled FDIC-R's motion under Rule 52, thereby finding that Placida's evidence of damages was sufficient to meet its burden of proof[6]. [Trial Trans. Vol 1, p. 178]

FDIC-R's arguments made to support its objection to the introduction of Plaintiff's Exhibit 22, at the close of Placida's case and at the close of all evidence at trial are ***exactly*** the same arguments being made in FDIC-R's Motion for Reconsideration. Because the Court has already considered these arguments and denied FDIC-R's objections and motions, a Motion to Reconsider the same would be improper. <u>Lamar Adver. of Mobile, Inc.</u>, 189 F.R.D. at 489 (a court should not

---

[6] At the close of FDIC-R's case, it renewed its motion under Rule 52 for judgment on partial findings on the same grounds made at the close of Placida's case, but that motion was also denied by the Court. [Trial Trans. Vol 2, p. 100]

reconsider a previous ruling when it only relitigates what has already been found lacking).

FDIC-R also fails to acknowledge that two different and distinct measures of damages were well supported by evidence at trial. If the Court agrees with FDIC-R's position and reverses the award of damages in the amount of $960,000.00, which represents Placida's expectation interest measure of damages, the Court can still award damages under a reliance measure. This measure of damages would actually increase the award to Placida since the evidence at trial indicated that Placida's reliance damages were $2,005,206.15.

However, because FDIC-R has failed in its burden to prove 'clear error' in the Court's award of damages in the amount of $960,000.00, FDIC-R's Motion for Reconsideration must be denied and the Final Judgment in Placida's favor confirmed.

Finally, in its Motion for Reconsideration, FDIC-R also requests the Court to reconsider its decision to award Placida with its attorney's fees as the prevailing party, under the provisions set forth in the loan documents.

In its Trial Brief [DKT. 103], FDIC-R argued that Placida was not entitled to an award of its attorney's fees because it would contravene the "ratable distribution" requirement of FIRREA and argued that the award of attorney's fees would constitute an impermissible penalty, likening the same to an award of punitive damages. FDIC-R also argued that there was no provision in the loan documents that would permit an award of attorney's fees in actions for contract repudiation and argued that Placida could not receive an award of attorney's fees because fees are not "actual, direct compensatory damages."

At trial, FDIC-R argued that the attorney's fees provisions in paragraphs 6.9 and 7.1 of the loan agreement are not broad enough to entitle Placida to an award of prevailing party attorney's fees

9

and further argued that the attorney's fees provision in the note and mortgage were not applicable in the instant action, even though the loan agreement referenced the same. [Trial Trans. Vol 2, p. 126-129].

Now, in its Motion for Reconsideration, FDIC-R refreshes the argument made in its Trial Brief that Placida is not entitled to an attorney's fee award because § 1823(e) permits an award only to include "actual, direct, compensatory damages", not attorney's fees. And, the Motion also argues an entirely new basis for denying attorney's fees. FDIC-R asks the Court to reverse its ruling on attorney's fees arguing that Placida's failure to file a separate administrative claim for attorney's fees precludes their award at trial.

Not only is FDIC-R rehashing its losing arguments at trial, it argues an entirely new theory now that its other arguments have failed. Procedurally, this Court should not reconsider its rulings made at trial based on these arguments "which could, and should, have been previously made." <u>Scelta v. Delicatessen Support Servs., Inc.,</u> 89 F.Supp.2d 1311, 1320 (M.D.Fla.2000). Since FDIC-R failed to present this new argument at trial, it has no right to raise this new theory or argument in a motion for reconsideration. <u>Villaflores v. Royal Venture Cruise Lines, LTD.</u>, 1997 WL 728098, *2, (M.D.Fla. Nov. 17, 1997). Therefore, based purely on procedural grounds, FDIC-R's Motion for Reconsideration of the Court's award of attorney's fees to Placida should be denied.

Furthermore, even if the Court were to consider the substance of FDIC-R's new argument, its position is refuted by caselaw ***directly on point***, notwithstanding FDIC-R's contention in its Motion for Reconsideration that there is none.

In <u>RTC v. Titan Financial Corporation</u>, 22 F. 3d 923 (9th Cir 1994), the RTC argued that the court lacked subject matter jurisdiction to award the prevailing party (a loan guarantor) his attorney's

fees after trial because the guarantor failed to file an administrative claim seeking the same prior to the litigation. The *Titan* court noted that Section 1821(d) did not contain any language that would mandate the inclusion of attorney's fees in the definition of a "claim". Rather, in the absence of such language, and in light of the language in Rule 54(d) (which was the basis for awarding court costs to the guarantor), costs should be awarded as a matter of course to the prevailing party.

The Titan court also indicated that "with respect to FIRREA's exhaustion requirement, **it is appropriate to consider attorney's fees awarded pursuant to [statute] as part of court costs**." (Citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200, 108 S.Ct. 1717, 1721 (1988) (stating that at common law, attorney's fees were regarded as an element of 'costs' awarded to the prevailing party).

In the instant case, attorney's fees and costs were awarded to Placida pursuant to the express language of the loan documents. And, where recovery of attorney's fees is specified in the parties' contract, as is the case in this action, they may be awarded against the FDIC to the prevailing party. *FDIC v. Scott*, 125 F. 3d 254 (5th Cir 1997).

Therefore, the Court should deny FDIC-R's Motion for Reconsideration of the Court's award of prevailing party attorney's fees, both on procedural and substantive grounds.

## CONCLUSION

In seeking to have the Court reconsider its decision to award damages, to Placida, FDIC-R simply seeks to re-litigate what the court has already found to be lacking. And, in seeking to have the court reverse its judgment to entitle Placida to an award of attorney's fees and costs under the loan documents, it rehashes several arguments already considered by the Court as well as a new theory never before presented to the Court. However, FDIC-R introduces no new evidence, no

11

change in law and no argument to show a clear error was made by the Court at trial.

At best, FDIC-R has presented "arguable error".  However, "arguable error" is insufficient to meet FDIC-R's burden in its Motion for Reconsideration to prove "clear error."  Therefore, the FDIC-R's Motion for Reconsideration of the Court's Final Judgment [DKT. 122] must be denied.

### Certificate of Service

I CERTIFY that a copy of the foregoing has been provided via CM/ECF to Michael H. Rosen, Attorney for Defendant, 201 E. Kennedy Blvd, Suite 600, Tampa, Florida 33602 on February 16, 2012.

**THE EDWARDS LAW FIRM, PL**
**1901 Morrill Street**
**Sarasota, Florida 34236**
**Telephone: 941-363-0110**
**Facsimile: 941-952-9111**
**sedwards@edwards-lawfirm.com**
**Counsel for Plaintiff**


**By: /s/ Sheryl A. Edwards**
    **Sheryl A. Edwards**
    **Florida Bar No.: 0057495**